UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDOWAH NEWTON,<br><br>                    Plaintiff,<br><br>    -against-<br><br>LVMH MOËT HENNESSY LOUIS VUITTON INC. and RODNEY C. PRATT,<br><br>                    Defendants. | Civil Action No. 1:23-cv-10753 (LAP) |

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S ORDER TO
SHOW CAUSE FOR AN INJUNCTION AND TEMPORARY RESTRAINING ORDER

Dated: Rhinebeck, New York
       December 19, 2023

Nathaniel K. Charny
Charny & Wheeler P.C.
42 West Market Street
Rhinebeck, New York  12572
Tel:  (845) 876-7500
ncharny@charnywheeler.com

Megan S. Goddard
Siobhan Klassen
Goddard Law PLLC
39 Broadway, Suite 1540
New York, New York  10006
Tel:  (646) 964-1178
Megan@goddardlawnyc.com
Siobhan@goddardlawnyc.com

Stephen Bergstein
Bergstein & Ullrich
5 Paradies Lane
New Paltz, New York  12561
Tel:  (845) 419-2250
Steve@tbulaw.com

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

PROCEDURAL BACKGROUND ........................................................................................... 1

POINT I

FEDERAL LAW PROHIBITS MANDATORY ARBITRATION
OF SEXUAL HARASSMENT AND SEXUAL ASSAULT DISPUTES ................................. 4

POINT II

ONLY A COURT CAN DECIDE IF THE EFAA APPLIES
TO THE CLAIMS PENDING BEFORE THE ARBITRATORS ............................................ 8

POINT III

AN INJUNCTION SHOULD ISSUE AT LEAST WHILE
THIS COURT DETERMINES APPLICABILITY OF THE EFAA ...................................... 9

    A.     Standard of Review ........................................................................................... 9

    B.     There is Irreparable Harm ................................................................................. 9

    C.     Likelihood of Success or at the Least a "Serious Question" on the Merits ..... 11

CONCLUSION ........................................................................................................................ 12

TABLE OF AUTHORITIES

CASES

Allstate Ins. Co. v. Hisham Elzanaty, 929 F. Supp. 2d 199 (E.D.N.Y. 2013) ............................ 9, 10

In re American Exp. Financial Advisors Secs. Litig., 672 F.3d 113 (2d Cir. 2011)....................... 10

Barnes v. Festival Fun Parks, LLC,
No. 22-CV-165 (SLH), 2023 US Dist LEXIS 112915, 33 (W.D. Pa. June 27, 2023) .................... 5

China Shipping Container Lines Co. v. Big Port Serv. DMCC,
803 F. App'x 481 (2d Cir. 2020)................................................................................................... 11

Gov't Employees Ins. Co. v. Moshe,
No. 20-cv-1098, 2020 WL 3503176 (E.D.N.Y. June 29, 2020)..................................................... 11

Gov't Emps. Ins. Co. v. Tolmasov, 602 F. Supp. 3d 380 (E.D.N.Y. 2022).................................... 11

Johnson v. Everyrealm, Inc.,
No. 22-CV-6669 (PAE), 2023 US Dist LEXIS 31242 (S.D.N.Y. Feb. 24, 2023).................... 5, 7, 8

Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125 (2d Cir. 2003) .............................. 10

Metro. Taxicab Bd. of Trade v. City of New York, 615 F.3d 152 (2d Cir. 2010) ........................... 9

New York Pathological & X-Ray Labs., Inc. v. INS, 523 F.2d 79 (2d Cir. 1975)....................... 10

Newton v. LVMH Moet Hennessy Louis Vuitton Inc.,
2020 NY Slip Op 32290[U] (NY County July 10, 2020) ............................................................... 2

Newton v. LVMH Moet Hennessy Louis Vuitton, 192 AD3d 540 (1st Dept. 2021)...................... 2

Olivieri v. Stifel,
No. 21-CV-0046 (JMA/ARL), 2023 US Dist LEXIS 57001 (E.D.N.Y. Mar. 31, 2023) ............ 5, 6

Purdue Pharma L.P. v. Impax Laboratories, Inc.,
No. 02-CV-2803 (SHS), 2003 WL 22070549 (S.D.N.Y. Sep. 4, 2003)........................................ 11

United States v. Diapulse Corp. of Am., 457 F.2d 25 (2d Cir. 1972)............................................10

STATUTES

9 U.S.C. § 402.......................................................................................................................... 5, 8, 10

CPLR 7515....................................................................................................................................... 1

INTRODUCTION

Plaintiff Andowah Newton submits this Memorandum in support of her Order to Show Cause for an Injunction and Temporary Restraining Order that enjoin the JAMS arbitration proceedings pending before Arbitrator Ariel Belen and Arbitrator Kathleen Roberts at the very least while this Court determines applicability of the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (herein the EFAA), and once so determined, permanently enjoining those same arbitration proceedings.

PROCEDURAL BACKGROUND[1]

In February 2015, Plaintiff began employment with Defendant Louis Vuitton.  At the time, and as a prerequisite to her employment with Defendant Louis Vuitton, Plaintiff was compelled to sign an arbitration agreement mandating that all employment disputes be heard in arbitration (herein the Arbitration Agreement).

Within months, Plaintiff began to experience gender-based hostility, harassment and assault in the workplace.  Plaintiff made both verbal and then written complaints, to no avail.

Effective July 11, 2018, New York amended Article 75 of the Civil Practice Law and Rules (the CPLR) to prohibit mandatory arbitration of discrimination claims.  See CPLR 7515.

In November 2018, Defendant Louis Vuitton amended its Anti-Harassment Policy to incorporate New York's prohibition on mandatory arbitration, stating that "[E]mployees and applicants may file formal complaints of discrimination, harassment, or retaliation with federal or state agencies . . . . You may also file a complaint in state court."

---

[1] The procedural and factual contentions cited herein are supported by the Declaration of Andowah Newton submitted simultaneously with this application.

1

In reliance on CPLR 7515 and Defendant Louis Vuitton's amendment of the Anti-Harassment Policy, Plaintiff commenced litigation in New York State Supreme Court for sexual harassment, hostile work environment and retaliation under New York State and New York City law.

In response to Defendant Louis Vuitton's motion to compel arbitration, the Trial Court denied same and found that the Arbitration Agreement was "null and void, insofar as it seeks to remit the parties to binding arbitration in connection with the claims asserted in this lawsuit." <u>Newton v. LVMH Moet Hennessy Louis Vuitton Inc.</u>, 2020 NY Slip Op 32290[U] (NY County July 10, 2020) (Nock, J.).

On appeal the First Department reversed and ordered that the question of whether the Anti-Harassment Policy abrogated the mandatory arbitration agreement was a question for the arbitrator. <u>Newton v. LVMH Moet Hennessy Louis Vuitton</u>, 192 AD3d 540, 541-42 (1st Dept. 2021) ("The issue of whether the 2018 policy revisions supersede the arbitration agreement is one for the arbitrator, as the arbitration agreement contains a delegation clause and this issue does not involve strong public policy considerations.").

On June 1, 2021, Plaintiff commenced an arbitration proceeding pursuant to the Arbitration Agreement and First Department's Decision to challenge, among other things, gender-based hostility and retaliation within her workplace. In August 2021, Plaintiff filed a second arbitration demand pursuant to the First Department's Decision seeking a ruling that the Anti-Harassment Policy revisions abrogated the mandatory arbitration provisions of the Arbitration Agreement.

In response to Plaintiff's June 1, 2021 Demand, on June 18, 2021, Defendant Louis Vuitton commenced an arbitration proceeding seeking to recover attorneys' fees and costs in

2

connection with their motion to compel arbitration. Plaintiff's application that both matters be heard by the same Arbitrator was denied and the two arbitrations are being heard by different arbitrators.

The arbitrator hearing the question of application of the Anti-Harassment Policy has since ruled in favor of Defendant Louis Vuitton on that issue, finding that the policy revisions did not abrogate the Arbitration Agreement. More notably, in response, Defendant Louis Vuitton filed a demand for attorneys fees and costs (for $866,702.50, before a 10% "discount") based upon the Arbitration Agreement's "origination clause." That arbitrator has scheduled oral argument on the amount of fees to be awarded to Defendant Louis Vuitton for December 22, 2023.

Congress passed, in February 2022, and President Biden signed into law on March 3, 2022, the EFAA with the express purpose of ending the forced arbitration of claims arising out of gender-based hostility in the workplace -- the exact claims presented here.[2]

Meanwhile, Plaintiff continued to suffer workplace discrimination and retaliation, including, on December 1, 2022, effective January 1, 2023, Defendant Louis Vuitton's termination of Plaintiff's employment in retaliation for her reports of, and opposition to, the ongoing gender-based hostility in the workplace.

On May 19, 2023, Plaintiff commenced a Charge of Discrimination with the Federal Equal Employment Opportunity Commission (the EEOC) against Defendant Louis Vuitton and Defendants Louise Firestone, Frank Martinez, Anish Melwani and Rodney C. Pratt -- the administrative prerequisite to Plaintiff's putative Title VII Federal Court litigation on all the continuing gender-based hostility and retaliation Plaintiff has suffered in Defendant Louis Vuitton's workplace.

---

[2] On November 16, 2021, Plaintiff testified before Congress, in accordance with the Congressional subpoena issued to her, in support of this bill.

Prior to commencing this matter, but after commencing the EEOC proceeding, Plaintiff here made application to Arbitrator Belen to stay the arbitration pending this then-putative lawsuit. Relying largely on the "hypothetical" nature of the application, Arbitrator Belen denied the request, but acknowledged that the Federal Court may issue an injunction based on the Court's interpretation of the EFAA. (Arbitrator Belen's Decision in this regard is submitted as Exhibit 2 to the Newton Declaration.) Plaintiff also made a request to Arbitrator Roberts to stay that arbitration, in her November 17, 2023 Opposition to Louis Vuitton's Fees Application.

By notice dated November 24, 2023, the EEOC issued its Notice of Right to Sue and the instant action followed.[3]

This application follows.[4]

POINT I

FEDERAL LAW PROHIBITS MANDATORY ARBITRATION
OF SEXUAL HARASSMENT AND SEXUAL ASSAULT DISPUTES

The EFAA is unequivocal that cases that relate to sexual harassment and retaliation in the workplace cannot be subject to mandatory arbitration.

The EFAA states:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

---

[3] While Defendants have yet to notice their appearance in this action, Defendants' counsel have agreed to accept service by way of waiver. Defendants' counsel are being served with these motion papers and all contact information is provided below the signature block of this memorandum and the notice of motion.

[4] Simultaneous with this motion, Plaintiff submits a request for pre-motion conference on Plaintiff's proposed First Amended Complaint that includes all claims currently pending before Arbitrator Belen. A copy of the proposed First Amended Complaint is submitted as Exhibit 3 to the Newton Declaration.

4

9 U.S.C. § 402(a).

It is now established that when the claims involve continuing violations -- as here -- the EFAA encompasses all claims whether they arose before or after the effective date of the EFAA. Olivieri v. Stifel, No. 21-CV-0046 (JMA/ARL), 2023 US Dist LEXIS 57001, at *10 (E.D.N.Y. Mar. 31, 2023); Johnson v. Everyrealm, Inc., No. 22-CV-6669 (PAE), 2023 US Dist LEXIS 31242, at *47 (S.D.N.Y. Feb. 24, 2023); cf. Barnes v. Festival Fun Parks, LLC, No. 22-CV-165 (SLH), 2023 US Dist LEXIS 112915, at *27-28, 33 (W.D. Pa. June 27, 2023) (acknowledging that "if the claim accrues after the effective date of the Act, the Act applies even though the violations occurred prior to March 3, 2022," but rejecting application of the EFAA because the plaintiff was terminated from employment prior to enactment).

Judge Azrack explains that broad sweep of the EFAA's coverage:

> Where, as here, the "continuing violation" doctrine purportedly applies to a plaintiff's claims, it is well-settled that those claims accrue on the day of the last act in furtherance of the violation. See, e.g., DeSuze v. Carson, 442 F. Supp 3d. 528, 544 (E.D.N.Y. 2020), aff'd sub nom. DeSuze v. Ammon, 990 F. 3d 264 (2d. Cir. 2021) ("a claim alleging an ongoing policy or practice accrues at the time of the last action in furtherance of it"); Hauff v. State Univ. of New York, 425 F. Supp 3d. 116, 134 (E.D.N.Y. 2019) (a hostile work environment claim does "not accrue until the last act in furtherance of the allegedly discriminatory practice"); Rosen v. N.Y.C. Dep't of Educ., No. 18-cv-6670, 2019 U.S. Dist. LEXIS 145380, 2019 WL 4039958, at *5 (S.D.N.Y. Aug. 27, 2019) (last act that "contributed to the hostile working environment" considered "the date of accrual").  The court in Walters suggested that, for purposes of the EFAA, hostile work environment claims could—in accordance with well-established continuing violation precedent—"accrue" as of the date of the "last act that is part of the hostile work environment." Walters, 2022 U.S. Dist. LEXIS 153228, 2022 WL 3684901, at *3.  The Court concludes that the term "accrue" should be interpreted in accordance with these well-settled accrual principles that apply to harassment claims -- the very claims that are the heart of the EFAA.

5

> As addressed above, Plaintiff's PSAC asserts conduct allegedly perpetrated by Defendants in continuation of her previously asserted claims. Indeed, not only does Plaintiff's PSAC plausibly assert claims that "relate to" her underlying sexual harassment claims, as required by the EFAA, but hostile work environment claims are, by their very nature, claims of ongoing and continuing conduct. See, e.g., AMTRAK v. Morgan, 536 U.S. 101, 117-18 (2002) ("Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct [and] . . . cannot be said to occur on any particular day. It occurs over a series of days or perhaps years"); Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 220 (2d Cir. 2004) ("A claim of hostile work environment is timely so long as one act contributing to the claim occurred within the statutory period.").
>
> In light of these facts and caselaw, the Court concludes that Plaintiff's claims have continued to accrue after the EFAA's March 3, 2022 enactment, by virtue of Defendants' alleged ongoing conduct. Based on these findings, the Court concludes that the EFAA applies to Plaintiff's claims and vacates its March 28 Order that Plaintiff's claims be arbitrated; Plaintiff's claims will be adjudicated in this Court.

Olivieri, 2023 US Dist LEXIS 57001, at *12-14.

It is now similarly established that because of the broad wording of the EFAA, not only are such Arbitration Agreements struck down, <u>such abrogation applies to all the claims made in the case</u>, even those unrelated to the sexual harassment and retaliation claims.

The Johnson Court explains:

> [T[he text of § 402(a) makes clear that its invalidation of an arbitration agreement extends to the entirety of the case relating to the sexual harassment dispute, not merely the discrete claims in that case that themselves either allege such harassment or relate to a sexual harassment dispute (for example, a claim of unlawful retaliation for a report of sexual harassment) . . . The reading of the EFAA that lends coherence to the use of [] separate terms assigns distinct meanings to "case" and "claim," with the former referring to the entirety of the lawsuit in which claim(s) implicating a sexual harassment dispute are brought.

6

> In construing § 402(a), it is significant, too, that the EFAA amended the FAA directly (rather than, for example, amending a separate statute, such as Title VII, to bar the arbitration of certain claims arising under it). That reinforces Congress's intent to override -- in the sexual harassment context -- the FAA's background principle that, in cases involving both arbitrable and non-arbitrable claims, "the former must be sent to arbitration even if this will lead to piecemeal litigation."
>
> *   *   *
>
> Congress's choice to amend the FAA directly with text broadly blocking enforcement of an arbitration clause with respect to an entire "case" "relating to" a sexual harassment dispute reflects its rejection -- in this context -- of the FAA norm of allowing individual claims in a lawsuit to be parceled out to arbitrators or courts depending on each claim's arbitrability . . . . Accordingly, []where a claim in a case alleges "conduct constituting a sexual harassment dispute" as defined, the EFAA, at the election of the party making such an allegation, makes pre-dispute arbitration agreements unenforceable with respect to the entire case relating to that dispute.

Johnson, 2023 US Dist LEXIS 31242, at *43-47 (citations omitted).

Here, Plaintiff elects to proceed with the entirety of her case and claims in Court, and not under the Arbitration Agreement. See Newton Decl. ¶ 21.

As such, this matter is similar to Olivieri and Johnson.

Plaintiff's claims against the Defendants have continued to accrue after the EFAA's enactment by virtue of Defendant's ongoing conduct. As such, it is submitted that under the EFAA all of Plaintiff's claims must be adjudicated in this Court.

7

POINT II

ONLY A COURT CAN DECIDE IF THE EFAA APPLIES
TO THE CLAIMS PENDING BEFORE THE ARBITRATORS

Not only does the EFAA and its progeny jurisprudence mandate that the entirety of Plaintiff's case be heard in Court, the EFAA states just as unequivocally that the scope of the EFAA's coverage is to be determined by the Court, and not the arbitrator.

The EFAA states:

> An issue as to whether this chapter [9 USCS §§ 401 et seq.] applies with respect to a dispute shall be determined under Federal law.  The applicability of this chapter [9 USCS §§ 401 et seq.] to an agreement to arbitrate and the validity and enforceability of an agreement to which this chapter [9 USCS §§ 401 et seq.] applies shall be determined by a court, rather than an arbitrator, irrespective of whether the party resisting arbitration challenges the arbitration agreement specifically or in conjunction with other terms of the contract containing such agreement, and irrespective of whether the agreement purports to delegate such determinations to an arbitrator.

9 U.S.C. § 402(b); see also Johnson, 2023 US Dist LEXIS 31242, at *25 & n.11 ("consistent with the statutory text, that the EFAA empowers the Court to decide the arbitrability in the first instance").

Therefore, whatever objections Defendant Louis Vuitton may have to a Court's jurisdiction over the entirety of Plaintiff's case against Defendant Louis Vuitton, such dispute is for the Court to decide, as mandated by the EFAA, and not the arbitrator.

POINT III

AN INJUNCTION SHOULD ISSUE AT LEAST WHILE
THIS COURT DETERMINES APPLICABILITY OF THE EFAA

A.  Standard of Review

When evaluating whether a stay should be granted on an arbitration proceeding, courts look to the preliminary injunction standard.  "In order to justify a preliminary injunction, a movant must demonstrate (1) irreparable harm absent injunctive relief; and (2) 'either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor.'"  Allstate Ins. Co. v. Hisham Elzanaty, 929 F. Supp. 2d 199, 217 (E.D.N.Y. 2013) (quoting Metro. Taxicab Bd. of Trade v. City of New York, 615 F.3d 152, 156 (2d Cir. 2010)).

"Likelihood of success is not the focus at the early stages of a case such as this, because any likelihood of success inquiry would be premature.  Instead, the Court looks to whether there is a serious question going to the merits to make them a fair ground for trial."  Id.

Judge Spatt explains why injunctive relief is particularly on point in the instant context: "While the granting of a motion to compel means the parties are obligated to arbitrate, the Court sees no reason why the right to an arbitration forum means that this right must be immediate. The contractual agreement to arbitrate can be fulfilled, even if it is deferred in light of the issuance of a temporary stay.  In other words, if an injunction is not permanent, then it will not eviscerate one's right to compel."  Id.

B.  There is Irreparable Harm

To establish irreparable harm, a party seeking preliminary injunctive relief must show that "there is a continuing harm which cannot be adequately redressed by final relief on the merits" and for which "money damages cannot provide adequate compensation."  Allstate Ins.

9

Co. v. Hisham Elzanaty, 929 F. Supp. 2d at 221 (quoting New York Pathological & X-Ray Labs., Inc. v. INS, 523 F.2d 79, 81 (2d Cir. 1975)).

The Second Circuit has established that where a statute provides certain protections, violation of same constitutes irreparable injury essentially per se. The Second Court explains: "The passage of the statute is, in a sense, an implied finding that violations will harm the public and ought, if necessary, be restrained." United States v. Diapulse Corp. of Am., 457 F.2d 25, 28 (2d Cir. 1972).

Here, the statute is unequivocal that this Court has exclusive authority to determine whether Plaintiff is entitled to application of the EFAA to all of her claims. 9 U.S.C. § 402(b). As such, it is submitted that the statute mandates that there is irreparable harm in any further processing of the arbitration proceedings pending this Court's determination.

In addition, given the mandates of the EFAA, it is in fact and law questionable whether the actual agreement to arbitrate is valid. The Second Circuit has made explicit that in this context irreparable harm is found and the arbitration proceedings should be enjoined. In re American Exp. Financial Advisors Secs. Litig., 672 F.3d 113 (2d Cir. 2011). In such a case, as here, Plaintiff will be "irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable . . ." Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 129 (2d Cir. 2003).

In addition, if the Court were to allow the parallel proceedings, even in the interim while the Court is deciding the merits of the application of the EFAA, Plaintiff will suffer the possibility of "awards that might eventually be, at best, inconsistent with this Court's ruling, and at worst, essentially ineffective . . . It is sufficient to recognize the large realm of potential

problems this may cause on the validity of those awards, especially in light of their multitude and internal inconsistency with each other." Allstate Ins. Co., 929 F. Supp. 2d at 222.

C.  Likelihood of Success or at the Least a "Serious Question" on the Merits

It is similarly statutorily uncontroverted that this Court is empowered by the EFAA to apply the EFAA in this context. There is no question as to this jurisprudential reality.

As such, it is submitted that there is a certainty of success that this Court shall be the tribunal to determine the arbitrability of Plaintiff's claims currently before the JAMS arbitrators. As such injunction should issue while this Court makes it determination.

Additionally, it is submitted that the Court should determine that in fact and law the EFAA mandates that all of the JAMS proceedings be permanently stayed, and that the Court grant Plaintiff's motion for leave to file the First Amended Complaint. In this context – where the conclusion is that the Arbitration Agreement is null and void – "Federal courts generally have remedial power to stay arbitration." China Shipping Container Lines Co. v. Big Port Serv. DMCC, 803 F. App'x 481, 485 (2d Cir. 2020) (citing authority).

The relief requested herein would not impose any burden on Defendants and it is reasonable and appropriate that this Court adjudicate the application of the EFAA prior to any further proceedings before the JAMS arbitrators. The alternative may lead to the very inconsistent results the possibility of which routinely justify the very same injunctions sought here. See Gov't Emps. Ins. Co. v. Tolmasov, 602 F. Supp. 3d 380, 387 (E.D.N.Y. 2022) ("irreparable harm may be established by 'the risk of inconsistent judgments'"); Purdue Pharma L.P. v. Impax Laboratories, Inc., 02 Civ. 2803 (SHS), 2003 WL 22070549, at *7 (S.D.N.Y. Sep. 4, 2003) ("Public policy is also served by preventing the possibility of inconsistent judicial results, which would further delay the resolution of this dispute."); See Gov't Employees Ins. Co.

v. Moshe, No. 20-cv-1098, 2020 WL 3503176, at *2 (E.D.N.Y. June 29, 2020) ("[Second Circuit precedent] does not preclude granting an injunction to avoid inconsistent judgments").

Considering Plaintiff's allegations of sexual harassment, the importance of ensuring that victims of sexual harassment are not improperly compelled into arbitration and thereby subjected to inconsistent judgments, as evidenced by the EFAA's passage, and the importance of preventing Defendants from usurping this Court's jurisdiction, the balance of the equities, the hardships, and the public's interest weigh in Plaintiff's favor.

## CONCLUSION

For these reasons, as well as the entire record before the Court, Plaintiff seeks an injunction staying any further arbitration proceedings and enjoining any additional arbitrations from being commenced while this Court determines whether all of those claims are properly before this Court and are precluded from being subject to mandatory arbitration.

Dated: Rhinebeck, New York
December 19, 2023

                                        /s/ Nathaniel K. Charny
                                        Nathaniel K. Charny
Charny & Wheeler P.C.
42 West Market Street
Rhinebeck, New York  12572
Tel:  (845) 876-7500
ncharny@charnywheeler.com

Megan S. Goddard
Siobhan Klassen
Goddard Law PLLC
39 Broadway, Suite 1540
New York, New York  10006
Tel:  (646) 964-1178
Megan@goddardlawnyc.com
Siobhan@goddardlawnyc.com

Stephen Bergstein
Bergstein & Ullrich
5 Paradies Lane
New Paltz, New York  12561
Tel:  (845) 419-2250
Steve@tbulaw.com