UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANDOWAH NEWTON,

                    Plaintiff,

    -against-

LVMH MOET HENNESSY LOUIS
VUITTON INC. AND RODNEY C.
PRATT,

                    Defendants.

---

No. 23-CV-10753 (LAP)

OPINION AND ORDER

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is Defendants LVMH Moet Hennessy Louis Vuitton Inc.'s ("LVMH") and Rodney C. Pratt's (together with LVMH, "Defendants") Motion to Compel Arbitration and/or to Dismiss Plaintiff Andowah Newton's complaint, (see dkt. no. 1 [the "Complaint" or "Compl."]). (See dkt. no. 30 ["Defendants' Motion"]).[1] Also pending before the Court is Plaintiff's cross-motion (1) for leave to amend her Complaint, (2) to enjoin ongoing arbitration proceedings, and (3) to unseal certain documents Defendants have filed under seal in the above-captioned case. (See

---

[1] In addition to Defendants' Motion, they have also filed a Memorandum of Law in Support of Their Motion to Compel Arbitration and/or Dismiss, (see dkt. no. 31 ["Def. Br."]); a Reply Brief in Support of Their Motion to Compel Arbitration and/or Dismiss, (see dkt. no. 38 ["Def. Reply"]); a Brief in Opposition to Plaintiff's Cross-Motion, (see dkt. no. 39 ["Defendants' Opposition" or "Def. Opp."]); the Declaration of Aviva Grumet-Morris in Support of Their Motion, and Exhibits A-D attached thereto, (see dkt. no. 32 ["First Grumet-Morris Declaration" or "1st Grumet-Morris Decl."]); and the Declaration of Aviva Grumet-Morris in Support of Defendants' Opposition, (see dkt. no. 40 ["2nd Grumet-Morris Decl."]).

dkt. no. 36 ["Plaintiff's Cross-Motion"]).[2]  For the reasons that follow, the Court grants in part and denies in part Defendants' Motion and grants in part and denies in part Plaintiff's Cross-Motion.

## I.    <u>Background</u>

### A. Factual Background[3]

Plaintiff is an attorney who began working for Defendant LVMH as litigation counsel in 2015.  (<u>See</u> Compl. ¶ 31.)  In May of that year, LVMH Director of Property and Facility Operations Lloyd Doran began sexually harassing Plaintiff, including by lingering in and outside Plaintiff's office and making comments about her appearance.  (<u>See</u> <u>id.</u> ¶¶ 1, 51-54.)  Plaintiff alleges that in September 2015, Doran sexually assaulted her by pressing his pelvis and genitals against her while reaching for a phone in Plaintiff's office.  (<u>See</u> <u>id.</u> ¶ 55.)  She alleges Horan made her uncomfortable with instances of leering and ogling at the LVMH office and at

---

[2] In support of her Cross-Motion, Plaintiff has filed a Memorandum of Law in Opposition to Defendants' Motion and in Support of Her Cross-Motion, (<u>see</u> dkt. no. 37 ["Pl. Opp."]); a Reply Memorandum of Law in Further Support of Her Cross-Motion, (<u>see</u> dkt. no. 45 ["Plaintiff's Reply Brief" or "Pl. Reply"]); and the Declaration of Stephen Bergstein in Support of Her Cross-Motion and Exhibits 1-5 attached thereto, (<u>see</u> dkt. no. 46).

[3] The facts in this Opinion and Order are drawn primarily from Plaintiff's Complaint.  However, in considering Defendants' Motion to Compel, the Court also relies on admissible evidence the parties have submitted.  <u>See</u> <u>infra</u> Section II.A.

company events several more times through 2018.  (See id. ¶¶ 60-70.)

According to Plaintiff, she first reported Horan's conduct to LVMH's employment counsel, Frank Martinez, in or around 2015 and continued to make complaints through 2018.  (See id. ¶¶ 56, 75.) On or about May 31, 2018, an LVMH executive notified Plaintiff that LVMH would initiate an investigation into her complaints. (See id. ¶ 91.)  However, Plaintiff asserts the same executive scolded her for the actions she took in response to Horan's conduct.  (See id. ¶ 101.)  On June 3, 2018, Plaintiff filed a formal complaint with LVMH's Senior Vice President of Human Resources Gena Smith, in which complaint she requested that an outside "expert" conduct an investigation.  (See id. ¶¶ 112-14.) The next day, LVMH General Counsel Louise Firestone told Plaintiff the company's internal investigation revealed no violation of company policy or law.  (See id. ¶¶ 115-16.)  Later that week, LVMH hired an outside investigator to conduct another investigation, which included an interview with Plaintiff.  (See id. ¶¶ 121-22.)  On or about July 6, 2018, Smith told Plaintiff the outside investigation had also found no violation of any company policy or any law.  (See id. ¶ 127.)

During and after this period, Plaintiff alleges that individuals at LVMH began retaliating against her for her complaint.  Plaintiff asserts that this included the first negative

review Firestone ever gave her, on March 4, 2019, after four years of glowing reviews. (See id. ¶¶ 141-42.) The following month, Firestone excluded Plaintiff from the hiring process of a new intern and avoided personal interactions with Plaintiff. (See id. ¶¶ 147-50.) In May, Firestone took sole control of a litigation matter that had previously been Plaintiff's. (See id. ¶ 163.) Plaintiff alleges numerous similar instances of exclusion, ostracism, and removal of job duties occurred over the next year. (See id. ¶¶ 165, 181.)

Plaintiff also had several back-and-forth discussions with LVMH about her requests to work remotely. On March 13, 2020, after the onset of the COVID-19 Pandemic, Plaintiff requested to work remotely to accommodate unspecified underlying medical conditions. (See id. ¶ 177.) After LVMH required employees to return to work in the office at least two days per week in September 2020, Plaintiff emailed the company's Human Resources Benefits Manager stating that her medical conditions would require her to work remotely more frequently. (See id. ¶¶ 183-84.) On October 20, 2020, LVMH granted Plaintiff's request for extended remote work through January 2021, after which Plaintiff would have to supply a note from her medical provider to receive further accommodations. (See id. ¶ 193.) After LVMH had paused the return-to-office policy in January, Plaintiff submitted in February another accommodation request to work remotely. (See id. ¶¶ 207, 213, 220.) LVMH

4

requested further doctors' notes from Plaintiff to justify the request. (See id. ¶¶ 221, 232.) Plaintiff provided such notes, including two from her therapists attesting to her anxiety, on March 19, 2021. (See id. ¶ 238.) On March 30, 2021, LVMH granted Plaintiff's request but told her she would need to return to working in the office at least two days per week when her anxiety improved. (See id. ¶ 247.) In late April, LVMH required her to work in person two days per week. (See id. ¶ 249.) On November 5, 2021, Plaintiff requested to work remotely for six months based on a PTSD diagnosis, in response to which LVMH requested a note from a psychiatrist. (See id. ¶¶ 257-59.)

From late 2020 to early 2021, LVMH delayed providing matching donations it had promised for the foundation Plaintiff had founded in honor of her late brother. (See id. ¶¶ 198-206.) On February 24, 2021, Firestone told Plaintiff her bonus compensation would decrease by one-third. (See id. ¶ 226.)

On or about November 16, 2021, Plaintiff testified before Congress about sexual harassment and retaliation she experienced at LVMH. (See id. ¶ 261.) On March 3, 2022, President Biden signed the Ending Forced Arbitration in Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"), 9 U.S.C. § 401 et seq. into law. (See id. ¶ 265.) Three weeks later, on March 25, 2022, LVMH both denied Plaintiff's renewed request to work remotely and refused to

consider her for a promotion for which Plaintiff asserts she was qualified. (See id. ¶¶ 267-69.)

At an unspecified time in 2022, LVMH's outside counsel, Winston & Strawn, hosted a retreat for the employees of LVMH's legal group that Firestone and Martinez attempted to prevent Plaintiff from attending based on her illness in March of that year. (See id. ¶¶ 270-72.) Plaintiff was ultimately able to attend the retreat when she provided a doctor's note but states she encountered "disdainful looks" when she arrived, as well as colleagues' questioning why she had attended. (See id. ¶¶ 273-74.) From April through June 2022, Plaintiff claims that her superiors at LVMH failed to introduce her to a new intern, that Firestone berated Plaintiff and accused her of "dropping the ball on one of her assigned maters," and that Firestone gave Plaintiff a "time-consuming assignment while [she] was on vacation." (See id. ¶¶ 278-80.) She also states that she was not invited to a dinner that LVMH and Winston & Strawn hosted to celebrate Firestone at the end of Firestone's tenure with LVMH. (See id. ¶ 281.)

On July 25, 2022, Defendant Rodney Pratt replaced Firestone as Plaintiff's direct supervisor when he joined LVMH as its Senior Vice President and Chief Legal Officer. (See id. ¶ 282.) The next month, Pratt requested Plaintiff meet him "one on one" to discuss her legal claims against the company. (See id. ¶ 284); see also infra Section I.B. Plaintiff refused this request. (See

Compl. ¶ 285.)   Following this refusal, Plaintiff asserts Pratt behaved negatively toward her.  (See id. ¶ 286.)  Plaintiff states Pratt would ignore her in meetings, except to criticize her.  (See id. ¶ 293.)  She alleges that on August 25, 2022, Pratt required Plaintiff to seek approval before she could speak on a panel or at a conference and that, sometime in September or October, Defendants objected to her speaking at an upcoming conference at which she would "assert[] her rights to be free from gender discrimination by her employer."  (See id. ¶¶ 287-88.)  Around that same time, Pratt would "insert[] himself in communications on [Plaintiff's] matters" and "simultaneously exclud[e] her from other very important communications on her matters."  (See id. ¶ 292.)

Starting in October and concluding on November 16, 2022, Plaintiff shared several posts on social media sites LinkedIn, Instagram, and Twitter about testifying before Congress about her sexual assault and her experience of retaliation at LVMH.  (See id. ¶ 291.)  On November 30, 2022, LVMH and Winston & Strawn hosted a "farewell dinner" for Martinez but did not invite Plaintiff. (See id. ¶ 295.)

On December 1, 2022, Pratt held a meeting with Plaintiff during which he informed her LVMH would terminate her, effective January 1, 2023.  (See id. ¶¶ 298-99.)  LVMH required Plaintiff to gather her belongings, and staff escorted her out of the office. (See id. ¶¶ 303-05.)

### B. Procedural History

The instant lawsuit is the latest in a series of proceedings between the parties across myriad forums.  On April 23, 2019, Plaintiff filed a complaint against LVMH in Supreme Court, New York County, asserting claims for sexual harassment and retaliation under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") based on allegations described above that occurred prior to that date.  (See 1st Grumet-Morris Decl. Ex. A [dkt. no. 32-1], at 1, 24-28.)  LVMH moved to compel arbitration, which the court denied on July 13, 2020.  (See 1st Grumet-Morris Decl. Ex. B [dkt. no. 32-2], at 1.)  LVMH's motion was based on the arbitration agreement LVMH and Plaintiff both signed on December 17, 2014, before she began her employment with LVMH.  (See dkt. no. 14-1 [the "Arbitration Agreement"] at 5, 7-8; Def. Br. at 5.)  On March 18, 2021, the New York Appellate Division, First Department, reversed the decision of the New York County Supreme Court.  (See 1st Grumet-Morris Decl. Ex. B at 1-2.)

On June 1, 2021, Plaintiff initiated an arbitration proceeding against LVMH by filing a Statement of Claim.  (See 1st Grumet-Morris Decl. Ex. D [dkt. no. 32-4] [the "2021 Arbitration Demand"].)  In the 2021 Arbitration Demand, Plaintiff asserted claims against LVMH, Doran, Firestone, Martinez, Smith, and LVMH CEO Anish Melwani for sexual harassment under the NYSHRL and the

NYCHRL, retaliation under the NYSHRL and the NYCHRL, aider and abettor liability, and violations of the federal Equal Pay Act and the New York Equal Pay Act. (See id. ¶¶ 247-279.) In August 2021, she initiated a second arbitration proceeding in which she sought a ruling that revisions LVMH had made to its "Anti-Harassment Policy" abrogated the Arbitration Agreement. (See dkt. no. 14 ¶ 10.) The two arbitrations were consolidated before a single arbitrator, the Hon. Ariel E. Belen ("Arbitrator Belen"). (See 1st Grumet-Morris Decl. Ex. C [dkt. no. 32-3] [the "Arbitration Decision"] ¶ 4.) Arbitrator Belen issued the Arbitration Decision on February 28, 2023, in which he found, among other things, that Plaintiff's sexual harassment claim was arbitrable. (See id. at 20.)

On June 30, 2021, LVMH initiated a separate arbitration against Plaintiff to recover attorneys' fees and costs in connection with their motion to compel arbitration and ensuing appeal in New York State Court. (See dkt. no. 14 ¶ 11.) On March 7, 2024, the arbitrator in that proceeding issued an award granting the attorneys' fees LVMH sought. (See Pl. Opp. at 5.)

On May 19, 2023, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC"). (See Compl. ¶ 21.) On November 24, 2023, the EEOC issued Plaintiff a Notice of Right to Sue. (See id.)

Plaintiff then filed her Complaint on December 11, 2023, in which she asserts (1) a claim of retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") against LVMH; and (2) a claim of retaliation in violation of § 296 of the NYSHRL and § 8-107 of the NYCHRL against Pratt. (See id. ¶¶ 318-36.) On December 19, 2023, Plaintiff filed a Proposed Order to Show Cause and several materials in support thereof, seeking an order halting Defendants from continuing their arbitration proceedings or commencing any new arbitration proceedings against her. (See dkt. nos. 11-15.) Included in her materials was a proposed amended complaint. (See dkt. no. 14-3.) The following day, the Court held a hearing (the "Show Cause Hearing"), following which it denied Plaintiff's Proposed Order to Show Cause. (See dkt. no. 20.)

Defendants filed their Motion and supporting materials on February 13, 2024. (See dkt. nos. 30-32.) Defendants seek an order either compelling Plaintiff's two retaliation claims to arbitration or, alternatively, dismissing them with prejudice. (See Def. Br. at 20.) In conjunction with their Motion, Defendants filed a letter motion to seal Exhibits C and D to the First Grumet-Morris Declaration, which are the Arbitration Decision and the 2021 Arbitration Demand, respectively. (See dkt. nos. 29, 32.) After Plaintiff failed to oppose Defendants' letter motion, the Court granted Defendants' request to seal on February 21, 2024.

10

(See dkt. no. 33.)   On March 19, 2024, Plaintiff filed her opposition to Defendants' Motion as well as her own Cross-Motion, in which she urges the Court to deny Defendants' Motion and seeks an order (1) granting her leave to amend her Complaint, (2) enjoining the parties' ongoing arbitration proceedings, and (3) unsealing the Arbitration Decision and the 2021 Arbitration Demand.  (See generally Pl. Opp.)

On May 31, 2024, the parties notified the Court that, in a separate proceeding between the parties, the New York County Supreme Court issued an order that the Arbitration Decision—which Plaintiff had filed under seal on the docket of that case in support of one of her briefs—be unsealed.  (See dkt. nos. 48-49.) In response, on June 6, 2024, this Court ordered the unsealing of the Arbitration Decision on the docket in the instant litigation. (See dkt. no. 50.)

The matter is now fully briefed and ripe for adjudication.

II.  **Legal Standard**

   **A. Motion to Compel**

"The question of whether the parties have agreed to arbitrate . . . is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise."  Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016) (citing Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002)).  This question is "determined by state contract law principles."  Id.

11

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., a party may "petition the district court for an order directing that 'arbitration proceed in the manner provided for in such agreement.'" Id. (quoting 9 U.S.C. § 4).  When deciding motions to compel arbitration, "courts apply a 'standard similar to that applicable for a motion for summary judgment.'"  Id. (quoting Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003)). Accordingly, the Court must consider "all relevant, admissible evidence submitted by the parties" and "draw all reasonable inferences in favor of the non-moving party." Id. (internal quotations and citations omitted).  Because of the "'strong federal policy favoring arbitration as an alternative means of dispute resolution,' [the Court] resolve[s] any doubts concerning the scope of arbitrable issues 'in favor of arbitrability.'" Daly v. Citigroup Inc., 939 F.3d 415, 421 (2d Cir. 2019) (quoting State of N.Y. v. Oneida Indian Nation of N.Y., 90 F.3d 58, 61 (2d Cir. 1996)).

**B. Motion to Dismiss**

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" In re Actos End-Payor Antitrust Litig., 848 F.3d 89, 97 (2d Cir. 2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  That "standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Palin v. N.Y. Times Co., 940 F.3d 804, 810 (2d Cir. 2019) (internal quotations omitted).  Evaluating "whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court "accept[s] all factual allegations in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor." Palin, 940 F.3d at 809.  The Court is not required, however, "to credit conclusory allegations or legal conclusions couched as factual allegations." Dane v. UnitedHealthcare Ins. Co., 974 F.3d 183, 188 (2d Cir. 2020) (ellipsis omitted).  "Accordingly, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (cleaned up).

Although the Court must accept all factual allegations as true when determining the sufficiency of a claim under Rule 12(b)(6), it may, in addition to a plaintiff's complaint, review

documents attached to the complaint or incorporated into it by reference and documents "integral" to the plaintiff's allegations, even if not explicitly incorporated by reference. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see also Williams v. Time Warner Inc., 440 F. App'x 7, 9 (2d Cir. 2011) (summary order) (a district court may consider documents integral to the complaint or incorporated by reference into the complaint on a motion to dismiss under Rule 12(b)(6)). A complaint "'is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" Chambers, 282 F.3d at 152 (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

However, a motion to dismiss must "be treated as one for summary judgment and disposed of as provided in [Federal Rule of Civil Procedure] 56" if the Court considers materials "outside the complaint" the parties have presented that are neither attached to the complaint, incorporated by reference, or integral to the complaint. Chambers, 282 F.3d at 152 (citing Fed. R. Civ. P. 12(b)).

### C. Motion to Amend

Federal Rule of Civil Procedure 15(a)(1) permits a party to amend its pleading "once as a matter of course" within twenty-one days of service of the pleading or within twenty-one days of the

service of the opposing party's responsive pleading or responsive motion.  <u>See</u> Fed. R. Civ. P. 15(a)(1).  However, "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  The Court should freely give the party leave to amend "when justice so requires."  <u>McCracken v. Verisma Sys., Inc.</u>, 91 F.4th 600, 609 (2d Cir. 2024) (quoting Fed. R. Civ. P. 15(a)(2)).  However, the Court "may deny leave to amend 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  <u>Cohen v. Am. Airlines, Inc.</u>, 13 F.4th 240, 247 (2d Cir. 2021) (quoting <u>TechnoMarine SA v. Giftports, Inc.</u>, 758 F.3d 493, 505 (2d Cir. 2014)).

### D. Injunction[4]

To obtain a preliminary injunction, a party "must show (1) 'a likelihood of success on the merits' or 'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in [its]

---

[4] Plaintiff is not entirely clear whether she seeks a preliminary injunction of the ongoing arbitration proceedings or a permanent injunction.  (<u>See</u> Pl. Opp. at 37-38 (citing standard for a preliminary injunction but asking to enjoin the arbitration proceedings permanently); Pl. Reply at 9 (stating that Plaintiff seeks a permanent injunction).)  Given the forcefulness of Plaintiff's contention in her Reply Brief that she seeks a permanent injunction, the Court infers that she seeks a permanent injunction.  Nevertheless, the Court briefly reviews the standards for both preliminary and permanent injunctions in this section given the uncertainty.

favor,' (2) that [it is] 'likely to suffer irreparable injury in the absence of an injunction,' (3) that 'the balance of hardships tips in [its] favor,' and (4) 'that the public interest would not be disserved by the issuance of a preliminary injunction.'" Mendez v. Banks, 65 F.4th 56, 63-64 (2d Cir. 2023) (quoting Salinger v. Colting, 607 F.3d 68, 79-80 (2d Cir. 2010)).

To obtain a permanent injunction, a party must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for the injury; (3) that, considering the balance of hardships . . . a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." SEC v. Citigroup Glob. Mkts., Inc., 752 F.3d 285, 296 (2d Cir. 2014) (quoting eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)).

## III. Discussion

### A. Defendants' Motion to Compel

The FAA "provides that arbitration clauses . . . 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Daly, 939 F.3d at 421 (quoting 9 U.S.C. § 2). Accordingly, the FAA requires a court to "direct the parties to proceed to arbitration on issues as to which an arbitration agreement has

been signed." Id. (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985)).

The party seeking to compel arbitration "bears an initial burden of demonstrating that an agreement to arbitrate was made[]" between the parties. Zachman v. Hudson Valley Fed. Credit Union, 49 F.4th 95, 101-02 (2d Cir. 2022). If the Court "concludes an agreement to arbitrate exists," it must then "determine (1) the scope of the agreement to arbitrate; (2) whether Congress intended any federal statutory claims asserted to be non-arbitrable; and (3) if some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." Id. at 101.

In the instant case, the parties do not dispute that Plaintiff and LVMH made an agreement to arbitrate or that the scope of that agreement includes the retaliation claims Plaintiff has asserted. (See Def. Br. at 6-8; see also generally Pl. Opp.) What the parties dispute is whether the EFAA applies to the two retaliation claims Plaintiff asserts in her Complaint and therefore exempts those claims from an arbitration proceeding in which they would otherwise have to be brought under the parties' Arbitration Agreement. (See Def. Br. at 8-14; Pl. Opp. at 7-10.) For the reasons that follow, the Court concludes that the EFAA applies to Plaintiff's two retaliation claims and, accordingly, the

Arbitration Agreement does not require Plaintiff to bring her claims in arbitration.

After Congress passed the EFAA, President Biden signed the act into law on March 3, 2022.  See 9 U.S.C. §§ 401, 402; Pub. L. No. 117-90, 136 Stat. 26.  Under the EFAA,

> at the election of [a] person alleging conduct constituting a sexual harassment dispute or sexual assault dispute . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a).  The statute further defines a "sexual harassment dispute" as one "relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law" and a "sexual assault dispute" as one that "involv[es] a nonconsensual sexual act or sexual conduct," as such terms are defined under the relevant federal, tribal, or state law.  See id. §§ 401(3)-(4).

Thus, the EFAA directly amends the FAA and "its 'liberal federal policy favoring arbitration agreements'" to permit a party to choose to invalidate the application of an arbitration agreement to a case that contains claims that relate to a sexual harassment dispute or a sexual assault dispute.  See Johnson v. Everyrealm, Inc., 657 F. Supp. 3d 535, 558, 560-61 (S.D.N.Y. 2023) (quoting CompuCredit Corp. v. Greenwood, 565 U.S. 95, 98 (2012)); see also Mitura v. Finco Servs., Inc., 2024 WL 232323, at *3 (S.D.N.Y. Jan.

18

22, 2024) (finding that, "at the election of the party making such an allegation, any pre-dispute arbitration agreement is unenforceable with respect to all causes of action relating to" a sexual harassment dispute). Despite "the FAA's background principle that, in cases involving both arbitrable and non-arbitrable claims, the former must be sent to arbitration" even if doing so "lead[s] to piecemeal litigation," the EFAA's provision that a litigant may elect to invalidate an arbitration agreement for any "case" requires courts to render such agreements unenforceable for an <u>entire case</u>. <u>See</u> <u>Johnson</u>, 657 F. Supp. 3d at 559-60. This is so even if only some or one of the claims a party asserts specifically relate to sexual harassment and/or sexual assault. <u>See</u> <u>id.</u> at 559. In other words, "where a dispute presents multiple claims—some related to sexual harassment, others not—the EFAA blocks arbitration of the entire case." <u>Delo v. Paul Taylor Dance Found., Inc.</u>, 685 F. Supp. 3d 173, 180 (S.D.N.Y. 2023).

For a claim to "relate[] to" conduct that is "alleged to constitute sexual harassment" sufficient to invalidate the effect of an arbitration agreement, the party bringing the claim must actually "alleg[e] that such conduct violated a law prohibiting sexual harassment." <u>Yost v. Everyrealm, Inc.</u>, 657 F. Supp. 3d 563, 585 (S.D.N.Y. 2023). And, to permit the Court to apply the EFAA to invalidate an arbitration agreement, the plaintiff

bringing such claims must put forth <u>plausible</u> allegations that the defendant violated a sexual harassment law; pleading an implausible or frivolous claim is insufficient to bring the case within the EFAA's ambit. <u>See</u> <u>id.</u> at 577, 585.[5]

However, a plaintiff need not "style[]" or "label[]" a cause of action as one for sexual harassment to invoke the EFAA. <u>See</u> <u>Delo</u>, 685 F. Supp. 3d at 181. So long as the substance of the factual allegations supporting a claim can "be fairly characterized, at least in part, as alleged sexual harassment violations," the party bringing that claim may invoke the EFAA to invalidate an otherwise enforceable arbitration agreement. <u>See</u> <u>id.</u> at 181-82. "[R]etaliation resulting from a report of sexual harassment is" sufficiently "relat[ed] to conduct that is alleged to constitute sexual harassment" to constitute a sexual harassment dispute to which the EFAA applies. <u>Olivieri v. Stifel, Nicolaus & Co., Inc.</u>, 2024 WL 3747609, at *15 (2d Cir. Aug. 12, 2024) (internal quotations omitted).

Thus, in light of the recent holdings in <u>Olivieri v. Stifel, Nicolaus & Co., Inc.</u> and <u>Delo v. Paul Taylor Dance Foundation, Inc.</u>, what a plaintiff must do to warrant invalidation of an

---

[5] The court in <u>Yost v. Everyrealm, Inc.</u> did not have occasion to determine specifically whether the plaintiff's claims related to a "sexual assault dispute," but the Court finds the analysis persuasive and applies it to its analysis of whether the instant case relates to a sexual harassment dispute or a sexual assault dispute. 657 F. Supp. 3d at 583 n.14.

arbitration agreement under the EFAA is file a complaint containing facts that allege either conduct constituting sexual harassment or sexual assault or retaliation for reporting such conduct.  See id.; Delo, 685 F. Supp. 3d at 181-82.

In addition, the EFAA applies only to claims that accrued on or after March 3, 2022, the day President Biden signed it into law.  See Walters v. Starbucks Corp., 623 F. Supp. 3d 333, 337 (S.D.N.Y. 2022) ("Walters's claims in this lawsuit are not covered by [the EFAA] because each claim arose or accrued before March 3, 2022."); Johnson, 657 F. Supp. 3d at 550 (collecting cases). Accordingly, even plausibly pleaded claims alleging sexual harassment or sexual assault are not arbitrable if they accrued prior to enactment.  See Walters, 623 F. Supp. 3d at 337-39 (granting motion to compel arbitration where plaintiff's claims for sexual harassment, discrimination, and retaliation accrued before March 3, 2022).

The Court finds that the EFAA applies to the two retaliation claims asserted in Plaintiff's Complaint because they accrued after the enactment of the statute and relate to a sexual harassment dispute or a sexual assault dispute based on Plaintiff's allegations that Defendants retaliated against her for reporting and speaking out about such conduct.  Accordingly, the Arbitration Agreement is unenforceable with respect to the instant case and Defendants' motion to compel is denied.

1. <u>The Applicability of the EFAA to Plaintiff's Claims</u>

     *a. Relation to a Sexual Harassment and/or Assault Dispute*

In her Complaint, Plaintiff asserts only claims for retaliation under Title VII, the NYSHRL, and the NYCHRL. (<u>See</u> Compl. ¶¶ 318-36.)  She therefore does not specifically assert claims seeking redress for discrimination, sexual harassment, or sexual assault.  Because the scant case law interpreting the EFAA in this District makes clear that Plaintiff was not required to label her claims as causes of actions for sexual harassment or sexual assault to invoke the EFAA, Plaintiff's failure to style her two claims as those seeking redress for sexual harassment or sexual assault does not, in itself, prevent the Court from applying the EFAA to the instant case.  <u>See</u> <u>Delo</u>, 685 F. Supp. 3d at 181-82.  Instead, her allegation that Defendants have retaliated against her for her reports of sexual harassment suffices to render the EFAA applicable to her claims.  <u>See</u> <u>Olivieri</u>, 2024 WL 3747609, at *15.

     *b. Timeliness*

Although Plaintiff's two retaliation claims substantively relate to a sexual harassment dispute or a sexual assault dispute, the EFAA applies to those claims only to the extent they accrued after the statute's enactment.  <u>See</u> <u>Walters</u>, 623 F. Supp. 3d at 337-39; <u>Johnson</u>, 657 F. Supp. 3d at 550.

"[A] claim accrues when the plaintiff has a complete and present cause of action." Gabelli v. SEC, 568 U.S. 442, 448 (2013) (internal quotations and citations omitted).  Where plaintiffs assert claims under Title VII premised on "[d]iscrete acts" of retaliation or discrimination, such as "termination, failure to promote, denial of transfer, or refusal to hire," the claim accrues and the statute of limitations begins to run on the date of the occurrence of those acts.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110, 114-15 (2002)); see also Banks v. Gen. Motors, LLC, 81 F.4th 242, 259 (2d Cir. 2023) (noting the same where plaintiff had asserted claims for both discrimination and a hostile work environment based on sexual harassment).  This is so because "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." Morgan, 536 U.S. at 114 (internal quotations omitted).

In contrast, claims of discrimination and retaliation under Title VII that are premised on an allegedly hostile work environment are subject to the continuing violation doctrine because they "'involve[] repeated conduct,'" and incidents that "'occur over a series of days or perhaps years . . . may not be actionable on [their] own.'" Banks, 81 F.4th at 259-60 (quoting Morgan, 536 U.S. at 115).  So long as at least one "act contributing to the claim occurs within the filing period, the

entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Morgan, 536 U.S. at 117.  For an otherwise untimely act to contribute to a hostile work environment enough to warrant consideration by the Court, it must be "sufficiently related" to timely unlawful acts. See McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 77 (2d Cir. 2010).  "[T]he commonality of the environment in which the incidents took place (and whether a change in environment is due to intervening action by the employer), the nature of the incidents, and the temporal discontinuity between the incidents [] are significantly relevant to assessing whether" allegedly hostile or retaliatory incidents are sufficiently related.  Id. at 81-82 (Calabresi, J., concurring).  The Court assesses the continuing violation the same way for discrimination and retaliation claims brought under the NYSHRL.  See Taylor v. City of New York, 207 F. Supp. 3d 293, 302, 307 (S.D.N.Y. 2016) (noting "the continuing violation[] doctrine of the NYSHRL mirrors that of Title VII"); Cardwell v. Davis Polk & Wardwell LLP, 2020 WL 6274826, at *38-39 (S.D.N.Y. Oct. 24, 2020) (noting the "weight of authority has held that Morgan applies to" discrimination and retaliation claims under the NYSHRL (internal quotations omitted)).  Similarly, under the NYCHRL, acts of discrimination or retaliation may be part of a continuing violation if they were part of a "consistent pattern" or "continuing policy" of discriminatory or retaliatory acts.  See

Cruz v. City of New York, 2021 WL 5605139, at *5 (S.D.N.Y. Nov. 30, 2021) (citing Williams v. New York City Hous. Auth., 872 N.Y.S.2d 27, 35 (1st Dep't 2009)).

Accordingly, the EFAA could apply only to discrete retaliatory acts that occurred on or after March 3, 2022, or to prior acts that are "sufficiently related" to timely unlawful acts to constitute a continuing violation.  See McGullam, 609 F.3d at 77; Morgan, 536 U.S. at 114; Walters, 623 F. Supp. 3d at 337.

In her Complaint, Plaintiff only alleges discrete acts of retaliation after the EFAA's enactment that are insufficiently connected to prior alleged unlawful acts to constitute a continuing violation.  By Plaintiff's own admission, "the retaliation claims [included in her Complaint] are materially different" from Defendants' alleged retaliation that pre-dated the EFAA's enactment because the latter "are comprised primarily of [a] retaliatory hostile work environment [theory] while the retaliation claims in the instant proceeding arise primarily out of Defendants' retaliatory discharge of Ms. Newton from her employment, denial of reasonable accommodation, and denial of promotion."  (Pl. Opp. at 18-19.)  Plaintiff alleges in her Complaint that Defendants took each of these "materially different" retaliatory actions against her after Congress enacted the EFAA.  (See Compl. ¶¶ 12, 263-69, 299-306.)  According to Plaintiff, Defendants both denied her a promotion and denied her

reasonable accommodation request on March 25, 2022, and informed her on December 1, 2022, that they would terminate her effective January 1, 2023.  (See id. ¶¶ 12, 268-69, 299-306.)

That Plaintiff concedes the termination, denial of a reasonable accommodation, and denial of a promotion she alleges are so "materially different" from the "retaliatory hostile work environment" claims that occurred before March 3, 2022, indicates that they are not continuations of the same pattern or practice of hostility she previously asserted, but discrete acts.  The law confirms this.

Under Title VII, every "discrete retaliatory . . . act occur[s] on the day that it happen[s]" and constitutes a "single occurrence."  Morgan, 536 U.S. at 110-11 (internal quotation marks omitted).  As such, each of the retaliatory acts Plaintiff "primarily" asserts in her Complaint, (see Pl. Opp. at 19)—the denials of her promotion and reasonable accommodation request and her termination—occurred only once and is therefore discrete.  (See Compl. ¶¶ 12, 268-69, 299-306); see also Morgan, 536 U.S. at 114 (describing "termination" and "failure to promote" as examples of "[d]iscrete acts" that "constitute[] a separate actionable unlawful employment practice" (internal quotation marks omitted)).  They could only be part of a continuing retaliatory environment if they were "sufficiently related to" the retaliatory hostile conduct that Plaintiff alleges she endured before Congress passed

the EFAA.  See McGullam, 609 F.3d at 77; Delo, 685 F. Supp. at 186.
The same conclusion applies for the retaliation claims Plaintiff
asserts under the NYSHRL.  See Taylor, 207 F. Supp. 3d at 307
(noting "the continuing violation[] doctrine does not apply
under . . . NYSHRL" where alleged retaliatory acts "concern
discrete acts").  However, under the more liberal standard of the
NYCHRL, the discrete retaliatory acts Plaintiff allegedly suffered
after March 3, 2022, could be considered part of Defendants'
continuing retaliation if they were part of a "consistent pattern"
or "continuing policy" of retaliatory acts.  See Cruz, 2021 WL
5605139, at *5 (citing Williams, 872 N.Y.S.2d at 35).

Here, Plaintiff's allegations leave no indication that the
acts on which she "primarily" rests her two retaliation claims
were either sufficiently related to the retaliation she allegedly
suffered before March 3, 2022, or part of a continuing policy or
consistent pattern of retaliation that existed prior to that date.
The multiple intervening changes that occurred between Plaintiff's
previous working environment and the discrete acts that undergird
the two retaliation claims in her Complaint demonstrate that the
claims are not sufficiently related.  See McGullam, 609 F.3d at 80-
81 (Calabresi, J., concurring) ("[T]he commonality of the
environment in which the incidents took place (and whether a change
in environment is due to intervening action by the employer), the
nature of the incidents, and the temporal discontinuity" are

27

relevant to assessing whether claims are sufficiently related);
see also Ball v. Marriott Int'l, Inc., 627 F. Supp. 3d 296, 314-
15 (S.D.N.Y. 2022) (courts may consider whether the harassers are
the same and the similarity of alleged incidents).

First, the figure within LVMH whom Plaintiff identifies as
the main perpetrator of retaliation prior to March 3, 2022, was
Louise Firestone.  However, Defendant Pratt replaced Firestone as
Plaintiff's direct supervisor on July 25, 2022, and was the
employee who informed Plaintiff four months later that she would
be terminated.  (See Compl. ¶¶ 282, 299.)  The fact that the
alleged retaliator who terminated Plaintiff differed from and
replaced the alleged retaliator who perpetrated most of the
retaliatory acts prior to March 3, 2022, supports the Court's
conclusion that the termination was not sufficiently related to
the retaliation Plaintiff allegedly suffered before Congress
enacted the EFAA.  See McGullam, 609 F.3d at 80-81 (Calabresi, J.,
concurring); Ball, 627 F. Supp. 3d at 314-15.  The same is true
even of the alleged exclusion Plaintiff alleges Pratt inflicted
upon Plaintiff—that is, even if it bears some similarity to earlier
alleged ostracism, the different alleged perpetrator and the lapse
in time undermines the already tenuous connection between them.
See McGullam, 609 F.3d at 80-81 (Calabresi, J., concurring); Ball,
627 F. Supp. 3d at 314-15.

Second, Plaintiff alleges that the retaliation she suffered after she testified in favor of the EFAA and after President Biden signed the statute into law on March 3, 2022, was of a different kind than the retaliation she had previously suffered in that Defendants primarily perpetrated it because of her testimony and her refusal to meet with Pratt about her legal claims. (See Compl. ¶¶ 267-68, 284-86.)    Plaintiff indicates that Defendants retaliated against her, including by denying her accommodation request on March 25, 2022, at least in part because she testified in Congress. (See id. ¶ 268.)  And she alleges Pratt's retaliation in late 2022 occurred after her refusal to discuss settlement. (See id. ¶¶ 285-86.)  These intervening changes alter the "nature of the incidents" to fracture their similarity further. McGullam, 609 F.3d at 80-81 (Calabresi, J., concurring).

Finally, the "primar[y]" retaliatory acts asserted in Plaintiff's Complaint—termination, denial of accommodation, and denial of a promotion Plaintiff experienced from March to December 2022—are dissimilar from the retaliatory acts Plaintiff allegedly suffered before the EFAA was enacted, such as ostracism, exclusion, failing to donate to Plaintiff's nonprofit foundation, and a negative performance review.  (See Compl. ¶¶ 162-64, 181, 206, 214.)  This dissimilarity bolsters the Court's conclusion that the pre-EFAA allegations of retaliation are insufficiently related to the post-EFAA retaliatory acts to constitute a continuing

violation under Title VII or the NYSHRL.  See Ball, 627 F. Supp. 3d at 314-15; McGullam, 609 F.3d at 77; Taylor, 207 F. Supp. 3d at 307.

The same facts lead to the same conclusion with respect to Plaintiff's retaliation claim under the NYCHRL.  They reveal "disconnected acts" "committed by different . . . actors" which fail to "amount to the consistent pattern or continuing policy required to allege a continuing violation under the NYCHRL." Cruz, 2021 WL 5605139, at *5; see also Taylor, 207 F. Supp. 3d at 307 (temporal discontinuity and the fact that "complaints were made to different people . . . suggest that the alleged retaliatory [acts] were not a continuous practice or policy of discrimination").

Accordingly, because Plaintiff has alleged only that she suffered discrete retaliatory acts on or after March 3, 2022, the EFAA can apply only to invalidate the application of the Arbitration Agreement to those specific acts—the only ones to have accrued after the statute's effective date.  See Morgan, 536 U.S. at 114; McGullam, 609 F.3d at 77; Walters, 623 F. Supp. 3d at 337. All alleged incidents of retaliation that occurred prior to that date are untimely for application of the EFAA.  See Morgan, 536 U.S. at 116; Walters, 623 F. Supp. 3d at 337.

## 2. Arbitrability of Plaintiff's Claims

As described above, the parties do not dispute the existence of the Arbitration Agreement or that it covers the employment

claims Plaintiff has asserted in her Complaint. Because Plaintiff's two retaliation claims accrued after the statute's enactment, the EFAA renders the Arbitration Agreement unenforceable for those claims. However, it remains enforceable for alleged incidents that accrued prior to the EFAA's enactment because any claims for such acts did not accrue on or after March 3, 2022, and are not part of a continuing violation. As such, the EFAA renders inarbitrable only the allegations of retaliation that occurred on or after March 3, 2022. <u>Johnson</u>, 657 F. Supp. 3d at 550, 559-60; <u>Walters</u>, 623 F. Supp. 3d at 337.

Accordingly, the Court DENIES Defendants' Motion to Compel.

**B. Defendants' Motion to Dismiss**

Despite its conclusion that the EFAA partially invalidates the parties' Arbitration Agreement with respect to Plaintiff's allegations of retaliation that accrued after the EFAA's enactment, the Court nonetheless dismisses Plaintiff's Complaint because she fails to state plausible claims for retaliation.

To survive a Rule 12(b)(6) motion to dismiss a retaliation claim under Title VII, a complaint must plausibly allege that (1) the plaintiff participated in a protected activity; (2) the defendant knew of the protected activity; (3) the plaintiff suffered an adverse employment action; and (4) there is a causal connection between the plaintiff's protected activity and the adverse employment action she suffered. <u>Littlejohn v. City of New</u>

York, 795 F.3d 297, 315-16 (2d Cir. 2015).  A plaintiff must file with the EEOC a charge alleging retaliation within 300 days of the last unlawful act.  See Morgan, 536 U.S. at 109.  Claims that accrued more than 300 days before the plaintiff filed his or her charge with the EEOC are time-barred.  See id.

The pleading requirements for a prima facie retaliation claim pursuant to the NYSHRL or the NYCHRL sufficient to survive a motion to dismiss are largely the same as those imposed for claims brought under Title VII, with the lone difference being that the plaintiff need only allege that "something happened that was reasonably likely to deter a person from engaging in protected activity" rather than that she suffered an adverse employment action. McHenry v. Fox News Network, LLC, 510 F. Supp. 3d 51, 67 (S.D.N.Y. 2020) (internal quotations and citations omitted) (noting the more liberal pleading standard under the NYCHRL); see also Arazi v. Cohen Bros. Realty Corp., 2022 WL 912940, at *16-17 (S.D.N.Y. Mar. 28, 2022) (noting the NYCHRL's more liberal pleading standard applies to claims under the NYSHRL following 2019 amendments to the NYSHRL).  A plaintiff must also sufficiently allege that the named defendant was "personal[ly] involve[d]" in retaliatory conduct against him or her.  See Lewis v. Roosevelt Island Operating Corp., 246 F. Supp. 3d 979, 992 (S.D.N.Y. 2017).  The statute of limitations is three years for retaliation claims

brought under both the NYSHRL and the NYCHRL. <u>Taylor</u>, 207 F. Supp. 3d at 302.

    1. <u>Timeliness</u>

Consideration of Plaintiff's two retaliation claims is necessarily limited to events that occurred after July 23, 2022—300 days before she filed her EEOC charge. As the Court has explained in detail above, under Title VII, discrete retaliatory acts Defendants allegedly took after that date are insufficiently related to retaliatory acts they took before that date to constitute a single hostile environment and render timely such untimely allegations under the continuing violation doctrine. <u>McGullam</u>, 609 F.3d at 77; <u>Taylor</u>, 207 F. Supp. 3d at 300-02, 307 (holding that retaliatory acts that occurred more than 300 days before the plaintiff's EEOC filing were neither timely nor sufficiently connected to timely acts to make them actionable). Crucially, Plaintiff alleges that Pratt replaced Firestone as Plaintiff's direct supervisor on July 25, 2022, and that Pratt carried out nearly every single retaliatory act that occurred after that. (<u>See</u> Compl. ¶¶ 282-306.) Plaintiff does not allege Pratt participated in any retaliatory act before that date. She also asserts that Defendants retaliated after July 23, 2022, primarily for her refusal to speak with Pratt about her legal claims against LVMH and, to a lesser extent, for remarks she made about her experience at LVMH in October and November 2022. (<u>See</u> <u>id.</u> ¶¶ 286-

93.)  As the Court explained in detail above, the significant intervening changes in (a) the identity of Plaintiff's alleged harasser and (b) the circumstances of Defendants' alleged retaliation altered the "nature of the incidents" to render the timely acts insufficiently related to acts that occurred prior to July 23, 2022, to warrant the Court's consideration under the continuing violation doctrine.  See McGullam, 609 F.3d at 80-81 (Calabresi, J., concurring); see also Ball, 627 F. Supp. 3d at 314-15.

Although the NYSHRL and NYCHRL are subject to three-year statutes of limitations for retaliation claims, the Court's consideration of those claims is nonetheless limited to retaliatory acts that Pratt allegedly took after July 23, 2022. That is because Plaintiff asserts her NYSHRL and NYCHRL claims only against Pratt.  (See Compl. ¶¶ 331-36.)  Because a defendant can only incur liability under these statutes if he or she was "personally involve[d]" in retaliating against the plaintiff, the allegations that pre-date Pratt's arrival at LVMH and tenure as Plaintiff's supervisor have no bearing on the Court's analysis of those claims.  See Lewis, 246 F. Supp. 3d at 992-93 (dismissing NYSHRL and NYCHRL retaliation claims against certain defendants where the plaintiff failed to allege how they participated in retaliatory acts).  Thus, for the NYSHRL and NYCHRL claims, the

34

Court need only assess allegations of Pratt's actions, all of which occurred after his arrival on July 25, 2022.

    2. <u>Failure to State a Claim</u>

Focusing only on allegations that occurred after July 23, 2022, the Court finds that Plaintiff has failed to state a claim for retaliation because she has failed to allege sufficiently that she engaged in protected activities of which Defendants were aware. Under Title VII, a plaintiff engages in protected activity only if she opposes any unlawful employment practice or "participate[s] in any manner in an investigation, proceeding, or hearing" undertaken in the course of EEOC proceedings.  <u>See</u> <u>Littlejohn</u>, 795 F.3d at 316.  Similarly, under the NYSHRL and NYCHRL, protected activities "include 'action[s] taken to protest or oppose statutorily prohibited discrimination.'" <u>Buchanan v. City of New York</u>, 556 F. Supp. 3d 346, 365 (S.D.N.Y. 2021) (quoting <u>Natofsky v. City of New York</u>, 921 F.3d 337, 354 (2d Cir. 2019)).  Under each of the three statutes, "opposition" includes filing formal complaints as well as informal protests, complaints to management, and expressing support for co-workers who filed formal charges. <u>See</u> <u>id.</u> at 366 (NYSHRL and NYCHRL); <u>Summa v. Hofstra Univ.</u>, 708 F.3d 115, 126-27 (2d Cir. 2013) (Title VII).

Plaintiff has not alleged that she has participated in any formal EEOC proceeding or that any of the retaliatory conduct that occurred after July 25, 2022, resulted from any such participation.

Thus, her claims could only survive dismissal if supported by plausible allegations that she opposed Defendants' unlawful employment practices.

The primary activity that Plaintiff asserts triggered Defendants' timely retaliatory acts is her refusal to meet with Pratt about a potential settlement of her legal claims against LVMH. (See Compl. ¶¶ 284-86.)  However, Plaintiff has provided no authority indicating that such refusal constitutes protected activity.  In fact, cases from other courts in the Second Circuit indicate the opposite.  In Bottge v. Suburban Propane, the court held that a plaintiff's "[r]efusal to sign a waiver of rights" of her discrimination claims, which waiver the defendants had demanded in negotiations following the plaintiff's assertion of such claims, "can only constitute protected activity if that refusal represents an intent to complain about discriminatory employment practices."  77 F. Supp. 2d 310, 312-13 (N.D.N.Y. 1999); see also Pleener v. New York City Bd. of Educ., 2007 WL 2907343, at *16 (E.D.N.Y. Oct. 4, 2007) (finding plaintiff's refusal to sign similar waiver was not a protected activity because plaintiff made no indication it was out of protest to discriminatory activity).  Because Plaintiff has provided no indication that her refusal to speak with Pratt about settlement represented her intent to complain further about Defendants' unlawful discriminatory

practices, the Court likewise concludes that it was not a protected activity.

To the extent Plaintiff asserts that the multiple statements she made on panels, at conferences, and on social media platforms in October and November 2022 constituted the protected activities necessary to support her claims, she has failed to allege plausibly that Defendants were actually aware of those activities. Even assuming, <u>arguendo</u>, that asserting at these events that she should be free from gender discrimination and discussing on social media her personal experiences with discrimination and retaliation qualify as protected activities because they entail opposing unlawful employment practices, Plaintiff has not given any indication Defendants knew about them. Typically, the knowledge element is satisfied where a plaintiff pleads "general corporate knowledge" of the protected activity, <u>see</u> <u>Patane v. Clark</u>, 508 F.3d 106, 115 (2d Cir. 2007), which a court may infer where the plaintiff engaged in protected activity directly with officers or authority figures of the employer, <u>see</u> <u>Gamble v. Fieldston Lodge Nursing & Rehab. Ctr.</u>, 697 F. Supp. 3d 112, 124-25 (S.D.N.Y. 2023). Here, however, Plaintiff made her statements on social media platforms and at outside events, not to employees at LVMH. She has not alleged that Pratt or any other LVMH employee attended those events, heard her remarks, or viewed or even had access to her written statements on social media. Although Plaintiff alleges

37

Defendants objected in October 2022 to her appearances at one of those panels, she alleges that such objection occurred before she actually delivered her remarks, (see Compl. ¶¶ 288, 290), and even contends in her opposition brief that Defendants' pre-event objection was premised on her prior refusal to discuss settlement with Pratt—which is not a protected activity—rather than in response to the content of her statements, (see Pl. Opp. at 14-15).  Accordingly, because Plaintiff has failed to allege any Defendants had notice of the statements she made in the fall of 2022, she has failed to plead plausibly that Defendants retaliated against her for those activities.  See Krasner v. HSH Nordbank AG, 680 F. Supp. 2d 502, 521 (S.D.N.Y. 2010) (dismissing complaint in which plaintiff failed to allege defendants had notice of his opposition to unlawful discrimination).

Finally, to the extent Plaintiff bases her retaliation claims on Defendants' response to her testimony before Congress in November 2021, her claims fail because she fails to allege sufficiently that such testimony was the cause of Defendants' response.  Because Plaintiff has not put forth direct allegations or evidence of Defendants' retaliatory animus, her contention that her testimony caused retaliation rests on an indirect inference of causation.  See Littlejohn, 795 F.3d at 319 (plaintiff can plausibly plead causation either directly, through evidence of retaliatory intent, or indirectly, through circumstantial evidence

38

or close temporal proximity between protected activity and retaliatory act); (see also Pl. Opp. at 32 (arguing for inference of causation based on temporal proximity).)   Assuming, without determining on the merits, that Plaintiff's testimony constituted protected activity, it occurred over nine months before the first timely retaliatory act that Plaintiff alleges Defendants took. (See Compl. ¶¶ 261, 287.)   Although the Court of Appeals has not precisely "drawn a bright line for defining . . . the outer limits beyond which a temporal relationship is too attenuated to establish causation," it has held that "five months" is near that outer limit.   Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010); see also Rightnour v. Tiffany & Co., 354 F. Supp. 3d 511, 527 (S.D.N.Y. 2019) (noting that a passage of more than two months typically does not allow for an inference of causation). Plaintiff has not provided any authority for the assertion that the nine-month gap between her congressional testimony and Defendants' first timely allegedly retaliatory act permits an indirect inference of retaliatory intent or causation.   Of course, Plaintiff has not argued that her congressional testimony was the cause of these timely acts, either.   And, as the Court has described above, the several intervening changes in that period—including Pratt's replacement of Firestone—further undercut any inference that Defendants committed their allegedly retaliatory acts in response to Plaintiff's testimony.

Accordingly, Plaintiff has failed to state a claim for retaliation against Defendants under Title VII, the NYSHRL, or the NYCHRL.  For that reason, Defendants' motion to dismiss each of Plaintiff's two retaliation claims is granted.

### C. Plaintiff's Cross-Motion to Amend

Plaintiff cross-moves for leave to amend her Complaint, to which she seeks to add four new causes of action, five new defendants, and a handful of new factual allegations.  (See Pl. Opp. at 33-37; see also id. at 48-137.)[6]  For the reasons that follow, the Court denies Plaintiff's cross-motion to amend.

Plaintiff requests leave to add claims for (1) sexual harassment based on a hostile work environment, pursuant to the NYSHRL and the NYCHRL; (2) aider and abettor liability under the NYSHRL and the NYCHRL for individual defendants' actions with respect to alleged gender discrimination and retaliation against Plaintiff; (3) unequal pay in violation of the federal Equal Pay Act, 29 U.S.C. § 206(d) et seq.; and (4) unequal pay in violation of the New York Equal Pay Act, N.Y. Labor Law § 190 et seq. (the "Proposed Added Claims" and each, a "Proposed Added Claim").  (See PFAC ¶¶ 350-77.)  Each of the additional defendants Plaintiff seeks

---

[6] Plaintiff has included as an addendum to her Cross-Motion brief a Proposed First Amendment Complaint ("PFAC"), which was not attached as an exhibit or separate document on the docket. References and citations to the PFAC shall be understood as citations to pages 48-137 of Docket Entry Number 37, Plaintiff's Cross-Motion brief.

to add were already mentioned throughout Plaintiff's Complaint but were not listed as parties to the litigation. (Compare PFAC, with Compl.) Plaintiff only seeks to amend factual allegations in eleven paragraphs of the PFAC, each of which relates to alleged incidents of retaliation one or more defendants took against Plaintiff either before she was terminated and before Congress enacted the EFAA, (see PFAC ¶¶ 156, 166), after Congress enacted the EFAA but before Plaintiff was terminated, (see id. ¶¶ 270-72, 275), or after LVMH terminated Plaintiff, (see id. ¶¶ 316, 322-25). In other words, the new factual allegations Plaintiff seeks to add do not relate substantively to the four Proposed Added Claims.

The thrust of Plaintiff's cross-motion to amend is that she wants the Court to review "all of the allegations currently pending before Arbitrator Belen" and to adjudicate "all of her claims" currently pending before Arbitrator Belen. (See Pl. Opp. at 33-34, 37.) Indeed, each of the four Proposed Added Claims is materially identical to four claims that Plaintiff asserted in the 2021 Arbitration Demand she filed on June 1, 2021. (Compare PFAC ¶¶ 350-77, with 2021 Arbitration Demand, dkt. no. 32-4, ¶¶ 247-54, 260-79.) In other words, she primarily wants to bring within the Court's purview all the causes of actions in the 2021 Arbitration Demand subject to the parties' arbitration proceeding,

in addition to the two retaliation claims she asserts in her initial Complaint.

Plaintiff's argument for why is clear.  She argues that the Proposed Added Claims "are part of the same 'case' as the Pending Action" and the two retaliation claims she asserts in her Complaint.  (See Pl. Reply at 4 (citing Johnson, 657 F. Supp. 3d at 561).)  Because the EFAA requires a court to invalidate an arbitration agreement's application to an entire "case"—including claims not specifically related to a sexual harassment or sexual assault dispute—Plaintiff seeks to add the four Proposed Added Claims to her Complaint to force the Court to invalidate the arbitration of those claims in the proceeding before Arbitrator Belen.  (See Pl. Opp. at 35-36 (citing Johnson, 657 F. Supp 3d at 559).)

The Court rejects Plaintiff's request for three reasons.

First, Plaintiff's proposed amendment would be futile because, following the Court's dismissal of the two retaliation claims included in Plaintiff's initial complaint, the Arbitration Agreement would apply to and require arbitration of each of the four Proposed Added Claims.  Second, Plaintiff misunderstands and misapplies the holding of Johnson v. Everyrealm, Inc.—that the EFAA requires the Court to invalidate an arbitration agreement's application to an entire "case."  See 657 F. Supp. 3d at 559. Because the claims in the arbitration proceeding before Arbitrator

42

Belen that Plaintiff seeks to add as the four Proposed Added Claims
are not part of <u>this</u> case before <u>this</u> Court, there is no basis to
add those claims to the Complaint and usurp them from Arbitrator
Belen's consideration.  Finally, Plaintiff's cross-motion to amend
is for a manifestly improper purpose.  Because Plaintiff's apparent
forum-shopping provides no basis to amend, Court will not grant
leave here.  Accordingly, Plaintiff's cross-motion to amend is
denied.

      1. <u>Futility of Plaintiff's Proposed Amendment</u>

Although Federal Rule of Civil Procedure 15(a)(2) provides
that a court shall freely grant leave to amend a complaint when
justice so requires, the Court "may deny leave to amend 'for good
reason, including futility, bad faith, undue delay, or undue
prejudice to the opposing party.'" <u>Cohen</u>, 13 F.4th at 247 (quoting
<u>TechnoMarine SA</u>, 758 F.3d at 505).  Proposed amendments may be
futile if they "would have no impact on the basis for the district
court's" decision on a motion, including a motion to dismiss.  <u>Kim
v. Kimm</u>, 884 F.3d 98, 105 (2d Cir. 2018).  One such example is a
proposed amendment that would add claims subject to a binding
arbitration agreement.  <u>See</u> <u>Kutluca v. PQ N.Y. Inc.</u>, 266 F. Supp.
3d 691, 704-05 (S.D.N.Y. 2017).

That is the case here.

The few new factual allegations Plaintiff seeks to add in the
PFAC are futile because they would not change the Court's

conclusions that (1) earlier alleged retaliatory incidents are not part of the same continuing violation as those that are timely and (2) the timely allegations of retaliation fail to sustain plausible claims under Title VII, the NYSHRL, and the NYCHRL.

Plaintiff's proposed added allegations that pre-date the EFAA's enactment provide no indication that they are "sufficiently related" to the timely acts because they were committed by different perpetrators than were the timely acts and occurred at least three years before the timely acts. See McGullam, 609 F.3d at 77; (see also PFAC ¶¶ 156, 166). Adding the proposed allegations of incidents that would be timely if alleged, (see PFAC ¶¶ 270-72, 275, 316, 322-25), would be futile because none of them support plausible claims for retaliation. In an apparent attempt to create an inference that the timely retaliatory acts are part of the same continuing violation as untimely acts, Plaintiff seeks to add allegations that LVMH replaced Firestone with Pratt and separately fired a different LVMH employee specifically to provide a pretext to retaliate against and terminate Plaintiff for her complaints of discrimination before the EFAA's enactment. (See id. ¶¶ 270-72, 275, 316.) These conclusory allegations of Defendants' conduct between the EFAA's enactment and Plaintiff's termination are wholly speculative and implausible and thus can neither support a claim for retaliation nor connect the timely retaliatory acts to the untimely acts or to

Plaintiff's earlier complaints of discrimination at LVMH.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  Lastly, because the allegations that Plaintiff proposes to add about LVMH's conduct after her termination include no plausible indication that the company took such action in response to any protected activity of which it was aware, they would not change the Court's finding, supra, that Plaintiff has failed to state her claims for retaliation.  See Kraiem v. JonesTrading Inst. Servs. LLC, 571 F. Supp. 3d 53, 62 (S.D.N.Y. 2021) (denying motion to amend where proposed allegations would fail to plead retaliation was in response to protected activity); Krasner, 680 F. Supp. at 521 (no allegation of defendants' knowledge of protected activity).

The Court similarly concludes that the addition of the Proposed Added Claims would be futile.  As described above, the parties have agreed that they are subject to the Arbitration Agreement whose scope covers employment disputes.  The only argument Plaintiff puts forth in her effort to render the Arbitration Agreement unenforceable is that the EFAA invalidates its application to this case.  (See Pl. Opp. at 7-10.)  But the EFAA does not apply to the four Proposed Added Claims for a simple reason:  they accrued before the statute became law on March 3, 2022.  Therefore, the EFAA has no effect on, and the Arbitration

Agreement applies to, the four Proposed Added Claims. <u>See</u> <u>Walters</u>, 623 F. Supp. 3d at 337.

As described above, Plaintiff included each of the four Proposed Added Claims in her 2021 Arbitration Demand before Arbitrator Belen. (<u>Compare</u> PFAC ¶¶ 350-77, <u>with</u> dkt. no. 32-4 ¶¶ 247-54, 260-79.) The four Proposed Added Claims repeat their parallels in the 2021 Arbitration Demand nearly verbatim. Upon a review by the Court, it does not appear that Plaintiff has added to the PFAC any new factual allegations to support these claims that occurred after June 1, 2021, when she filed the 2021 Arbitration Demand. Because Plaintiff includes no facts since that date to support the Proposed Added Claims, one would deduce that each accrued before then—well before the EFAA took effect nine months later.

A review of the PFAC confirms this. The last date Plaintiff alleges that any Defendant or proposed defendant committed an act of sexual harassment was in October 2020, nearly a year-and-a-half before the Proposed Added Claim for a sexually hostile work environment would have had to accrue for the EFAA to apply. (<u>See</u> <u>Compl.</u> ¶¶ 195-97; PFAC ¶¶ 200-02.) The allegations supporting her Proposed Added Claims for equal pay, which are substantively unchanged from her 2021 Arbitration Demand, appear to allege only that Plaintiff suffered a pay disparity through 2020, the last

46

date cited in the 2021 Arbitration Demand, Complaint, and the PFAC. (See dkt. no. 32-4 ¶¶ 31-40; Compl. ¶¶ 41-49; PFAC ¶¶ 47-55.)

Plaintiff's Proposed Added Claim for aider and abettor liability and the retaliation claim she asserted in her 2021 Arbitration Demand are also distinct from the two retaliation claims she brings in her Complaint.  As are the other Proposed Added Claims, they necessarily accrued before June 1, 2021, because they contain no material factual deviation from the claims she asserted in her 2021 Arbitration Demand.  And, by Plaintiff's own admission, "the retaliation claims [included in her initial Complaint] are materially different" from those she brought in her 2021 Arbitration Demand because the latter "are comprised primarily of [a] retaliatory hostile work environment [theory] while the retaliation claims in the instant proceeding arise primarily out of Defendants' retaliatory discharge of Ms. Newton from her employment, denial of reasonable accommodation, and denial of promotion."  (Pl. Opp. at 18-19.)  As described in detail above, because Plaintiff alleges in her Complaint that Defendants took these "materially different" retaliatory actions against her after Congress enacted the EFAA, the two retaliation claims Plaintiff asserts in her initial Complaint are not part of a single continuous retaliatory environment that she alleged in her 2021 Arbitration Demand.  See supra Sections III.A.1.b, III.B.1. Therefore, the continuing violation doctrine does not apply to

47

Plaintiff's two retaliation claims and does not rescue them from the Court's denial of Plaintiff's leave to amend the claims Plaintiff included in her 2021 Arbitration Demand and seeks to add in her PFAC.

Accordingly, the EFAA does not apply to the four Proposed Added Claims because each of them accrued prior to the statute's enactment. See Walters, 623 F. Supp. 3d at 337-39. Because the Court has already dismissed Plaintiff's two retaliation claims, permitting Plaintiff to add the four Proposed Added Claims would leave only those four claims for the Court's consideration—leaving no remaining claims that accrued after the effective date of the EFAA. But because the EFAA does not apply to invalidate the effect of the parties' Arbitration Agreement on the four Proposed Added Claims, the Court would have to compel them to arbitration. See id. Accordingly, amendment would not change the result of Defendants' Motion and granting Plaintiff leave to amend would be futile. See Kim, 884 F.3d at 105-06; Kutluca, 266 F. Supp. 3d at 704-05.

### 2. Plaintiff's Misreading of Johnson

Plaintiff seeks to circumvent the accrual date obstacle described above by arguing that the Proposed Added Claims are part of the same "case" as the retaliation claims she asserts in her Complaint. (See Pl. Reply at 4 (citing Johnson, 657 F. Supp. 3d at 561).) If that were the case, Plaintiff says, the Court would

have to find that the Arbitration Agreement is unenforceable for all of the claims in the instant case, including the Proposed Added Claims.    (See id. at 4-6; Pl. Opp. at 35-36.)    Under Judge Engelmayer's recent decision in Johnson, the Court would have to invalidate an arbitration agreement's application to an entire case if it found that a single one of a plaintiff's claims related to a sexual harassment dispute or a sexual assault dispute and was plausibly pleaded.  See Johnson, 657 F. Supp. 3d at 558-59.  But Plaintiff gets Johnson backward.

There, the court held that "a 'case' or 'action' refers to an overall legal proceeding filed in a court, whereas a 'claim' or a 'cause of action' refers to a specific assertable or asserted right within such a proceeding."  Id. (emphasis added) (collecting cases).  More specifically, the term "captures [a] legal proceeding as an undivided whole."  Id.  Thus, Johnson stands in part for the proposition that, as written in the EFAA, a "case" means a single proceeding in a specific forum.  It does not, as Plaintiff argues, encompass several claims disputed by the same parties across distinct and disparate forums.

To accept Plaintiff's argument that the present "case" already includes the Proposed Added Claims that the parties have been arbitrating before Arbitrator Belen for three years would run contrary to the holding of Johnson.  Instead of accepting all claims asserted within a single proceeding—despite an otherwise

49

applicable arbitration agreement—the Court would effectively have to reach across forums to separate proceedings and order them to cease even if the plaintiff has already initiated a singular case in federal court.  That is not what Johnson commands.

Because Johnson provides no basis to amend Plaintiff's claims, Plaintiff's cross-motion to amend is denied for this reason as well.

### 3. Plaintiff's Bad Faith

Finally, the Court denies Plaintiff's cross-motion to amend for the additional reason that Plaintiff appears to make the request in bad faith.  See Cohen, 13 F.4th at 247.  In Cohen v. American Airlines, Inc., the Court of Appeals affirmed the district court's denial of a plaintiff's leave to amend his complaint because it was apparent that he was doing so only to avoid the applicable statute of limitations under international law that would have required dismissal of his complaint.  Id.  Thus, as is the case here, the plaintiff sought leave to amend only to avoid the application of a law that would otherwise end his case. Plaintiff similarly appears to want to add the Proposed Added Claims because so doing would require the Court to apply the EFAA to invalidate the parties' Arbitration Agreement for all claims currently pending in arbitration before Arbitrator Belen.  This forum shopping leads the Court to conclude that the proposed amendment is requested in bad faith.

50

The Court's conclusion is bolstered by the timing of Plaintiff's proposed amendment.  As Defendants note, Plaintiff first raised the prospect of amendment in her papers supporting her Proposed Order to Show Cause and at the Show Cause Hearing the Court held telephonically on December 20, 2023—only days after she filed her initial Complaint.  (See Compl.; dkt. no. 14-3.)  As the Court noted at the Show Cause Hearing, Plaintiff was well within the 21-day window after service that Federal Rule of Civil Procedure 15(a)(1) provides to amend a complaint without leave of the Court.  See Fed. R. Civ. P. 15(a)(1)-(2).  But Plaintiff instead chose to wait months to seek the Court's leave under Rule 15(a)(2).  In the light most favorable to Plaintiff, her choice is curious.

However, the law and the circumstances are much less favorable to Plaintiff.  "[L]eave to amend may be denied where the moving party knows or should have known of the facts upon which the proposed amendment is based, but failed to include them in the original pleading."  Zubulake v. UBS Warburg LLC, 231 F.R.D. 159, 162 (S.D.N.Y. 2005) (denying leave to amend an answer when the defendants knew of the relevant information they sought to add at the time of the original pleading) (internal quotations and citations omitted).  Not only did Plaintiff know only nine days after she filed her original Complaint that she intended to amend it, but the proposed amendments reveal that she knew the relevant

51

information at the time she filed it.  As the Court has described in detail, the four Proposed Added Claims are nearly verbatim recitations of the claims she asserted in her 2021 Arbitration Demand.  She includes in the PFAC little new material information that she had learned in the intervening three years, let alone in the interval between her initiation of the instant lawsuit and her filing of the PFAC.  It is clear Plaintiff knew nearly all of the facts upon which her proposed amendment is based but intentionally omitted them from the initial Complaint, and certainly knew of all of them by the time the Court held the Show Cause Hearing. Accordingly, Plaintiff's cross-motion for leave to amend is denied on this basis.  See id.

### D. Plaintiff's Cross-Motion to Enjoin

The Court denies Plaintiff's cross-motion to enjoin the arbitration proceeding currently before Arbitrator Belen or any other arbitration proceeding between the parties.

Plaintiff is correct that the Court has authority to enjoin arbitration proceedings.  See In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d 113, 140-41 (2d Cir. 2011); Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth., 764 F.3d 210, 213 (2d Cir. 2014). However, such authority is limited to instances in which "the parties have not entered into a valid and binding arbitration agreement" whose scope covers the claims in dispute.  In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d at 140; see also China

52

Shipping Container Lines Co. Ltd. v. Big Port Serv. DMCC, 803 F.
App'x 481, 485 (2d Cir. 2020) (same).  The primary basis upon which
a court may enjoin an arbitration proceeding is if "the
parties . . . have not consented to arbitrate a claim[.]"  In re
Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d at 141.

Accordingly, the Court's "authority to enjoin arbitration
proceedings is limited . . . to situations where the underlying
arbitration agreement is invalid or nonbinding," McIntire v. China
MediaExpress Holdings, Inc., 113 F. Supp. 3d 769, 775 (S.D.N.Y.
2015) (citing In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d
at 140), or where the "various claims . . . [a]re not within the
scope of an arbitration agreement," In re Am. Exp. Fin. Advisors
Sec. Litig., 672 F.3d at 140.  Injunctions of arbitration
proceedings are therefore "strongly disfavored" where a "valid
agreement to arbitrate exists." McIntire, 113 F. Supp. 3d at 775.
Therefore, the Court's "role in determining whether to compel or
enjoin an arbitration is typically limited to analysis of the
agreement." Credit Suisse AG v. Graham, 533 F. Supp. 3d 122, 130
(S.D.N.Y. 2021).

The above limitations on the scope of the Court's authority
to enjoin an arbitration proceeding render the Court's analysis
"the same whether it relates to a petition to compel or a petition
to enjoin arbitration." Mrinalini, Inc. v. Valentino S.p.A., 2023
WL 2307479, at *6 (S.D.N.Y Mar. 1, 2023); Streamlined Consultants,

<u>Inc. v. Forward Fin. LLC</u>, 2022 WL 766233, at *1-2 (S.D.N.Y. Mar. 14, 2022).  That is, the Court must determine (1) whether the parties made a valid, binding arbitration agreement; (2) the scope of the agreement; (3) whether any federal statutory claims are non-arbitrable; and (4) if some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration.  <u>Zachman</u>, 49 F.4th at 101-02.

As described in detail above, the parties do not dispute that they have agreed to a valid arbitration agreement that covers claims for employment practices like the ones Plaintiff asserts in her Complaint, included in her 2021 Arbitration Demand, and seeks to add in the PFAC.  The only reason Plaintiff gives for why the parties' Arbitration Agreement is not valid and binding is that it will become "a nullity because of application of the EFAA."  (Pl. Opp. at 38.)  But the Court has concluded that EFAA does not apply to the claims Plaintiff asserts that accrued prior to the EFAA's enactment, including the Proposed Added Claims she seeks to amend in the PFAC.  <u>See</u> <u>supra</u> Sections III.C.1-2.  And, as described above, the claims Plaintiff asserted in her 2021 Arbitration Demand and that remain pending in the proceedings before Arbitrator Belen necessarily accrued before March 3, 2022.  Therefore, because the EFAA renders inarbitrable none of the claims pending in arbitration, the existing arbitration proceedings are subject to the parties' Arbitration Agreement.  <u>See</u> <u>Zachman</u>, 49 F.4th at 101;

Walters, 623 F. Supp. 3d at 337.  Accordingly, Plaintiff's cross-motion to enjoin the parties' arbitration proceedings is denied.  See Credit Suisse AG, 533 F. Supp. 3d at 135 (denying motion to stay or enjoin arbitration proceeding where it fell within the terms of the parties' agreement).

In addition, Plaintiff has not identified any irreparable harm she has suffered or is likely to suffer to warrant either a preliminary or permanent injunction.  See Mendez, 65 F.4th at 63-64; Citigroup Glob. Mkts., Inc., 752 F.3d at 296.  The Court of Appeals has held that a party may be irreparably harmed where it is forced into arbitration.  See Md. Cas. Co. v. Realty Advisory Bd., Inc. on Labor Relations, 107 F.3d 979, 984-85 (2d Cir. 1997).  However, that is only the case where the parties would be forced to "arbitrat[e] an issue that is not arbitrable," see id., or "participate in arbitration to which it did not consent[,]" NCL (Bahamas) Ltd. V. O.W. Bunker USA, Inc., 745 F. App'x 416, 418 (2d Cir. 2018) (citing Md. Cas. Co., 107 F.3d at 985).  As explained above, the parties consensually agreed to a binding Arbitration Agreement that covers Plaintiff's claims that accrued prior to March 3, 2022—including the four Proposed Added Claims—and which the EFAA has not invalidated.  Therefore, "[s]ince there is no question of arbitrability, there is no irreparable harm." Roddey v. Infosys Techs. Ltd., Inc., 2022 WL 16700270, at *3 (S.D.N.Y.

Nov. 3, 2022) (denying request to enjoin arbitration where the petitioner's claims were subject to arbitration agreement).

### E. Plaintiff's Cross-Motion to Unseal[7]

Both common law and constitutional principles guide the Court's analysis of the Proposed Intervenors' request to unseal. Common law provides a right of public access to judicial documents. See Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006).   To determine whether that right attaches to a particular document, courts in the Second Circuit must engage in a three-step analysis.   See United States v. Akhavan, 532 F. Supp.3d 181, 184 (S.D.N.Y. 2021).

First, the court must determine whether the documents at issue are "judicial documents," to which a presumption of public access attaches.  Lugosch, 435 F.3d at 119.   To be a judicial document, the "item filed must be relevant to the performance of the judicial function and useful in the judicial process[.]"  United States v. Amodeo ("Amodeo I"), 44 F.3d 141, 145 (2d Cir. 1995).   Second, the court must determine the weight of the presumption to be afforded to the judicial document.  See Lugosch, 435 F.3d at 119.   The

---

[7] The Court's conclusions with respect to Defendants' Motion and Plaintiff's cross-motions to amend and to enjoin arbitration do not affect the Court's ability to adjudicate Plaintiff's cross-motion to unseal.  See Stafford v. Int'l Bus. Machines Corp., 78 F.4th 62, 65 (2d Cir. 2023), cert. denied, 144 S. Ct. 1011 (2024) (ruling on motion to seal where substantive motion had already been mooted).

weight a court affords that presumption is "governed by the role
of the material at issue in the exercise of the Article III
judicial power and the resultant value of such information to those
monitoring the federal courts."  United States v. Amodeo
("Amodeo II"), 71 F.3d 1044, 1049 (2d Cir. 1995).  Finally, the
court "must 'balance competing considerations'" against the weight
of the presumption of access, which includes "'the privacy
interests of those resisting disclosure.'"  Lugosch, 435
F.3d at 120 (quoting Amodeo II, 71 F.3d at 1050).

    In addition, the public and the press "have a 'qualified First
Amendment right . . . to access certain judicial documents.'"  Id.
(quoting Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 91 (2d
Cir. 2004)).  When a movant challenges the sealing of a document,
the Court considers "whether the documents have historically been
open to the press and general public," whether "public access plays
a significant positive role in the functioning of the particular
process in question," and "the extent to which the judicial
documents are derived from or are a necessary corollary of the
capacity to attend the relevant proceedings."  Id. (internal
quotations and citations omitted) (cleaned up).  However, because
the First Amendment right of access to judicial documents is
qualified, the Court may order the sealing of documents if it makes
"specific, on the record findings" that sealing is necessary "to

preserve higher values and is narrowly tailored to serve that interest." Id.

Plaintiff's motion to unseal Exhibit D to the First Grumet-Morris Declaration is granted because it is a judicial document whose role in the Court's determination of the instant motions gives it a significant presumption of access which Defendants have failed to overcome. See id. at 119-20; Amodeo II, 71 F.3d at 1049.

Defendants submitted Exhibit D, the 2021 Arbitration Demand, in support of their dispositive Motion to Compel and/or Dismiss, which makes it a judicial document that is typically "subject to public scrutiny." Bernstein v. O'Reilly, 307 F. Supp. 3d 161, 166-67 (S.D.N.Y. 2018) (quoting Joy v. North, 692 F.3d 880, 893 (2d Cir. 1982)) (denying motion to seal an arbitration agreement filed in support of defendant's motion to compel arbitration or dismiss because it was a judicial document the defendant had "ask[ed] the Court to . . . rely[] on" to resolve the motion). Although the presumption of access afforded to such a judicial document does not depend on whether the Court actually relies on it in its adjudication of the motion, it does depend on "the role the document was intended to play in the exercise of the court's Article III duties." Id. at 167 (emphasis added) (quoting United States v. Sattar, 471 F. Supp. 3d 380, 386 (S.D.N.Y. 2006)). Thus, documents that the proponent intends to affect adjudication more directly carry a greater presumption of access. See id. at 167

58

(citing Gambale v. Deutsche Bank AG, 377 F.3d 133, 140 (2d Cir. 2004)).    Here, Defendants cite to and reference the 2021 Arbitration Demand several times throughout their briefs in support of their arguments that the EFAA does not apply to Plaintiff's claims and that Plaintiff has elected to arbitrate her claims—as Defendants say the 2021 Arbitration Demand itself demonstrates. (See Def. Br. at 9-10; Def. Opp. at 4 n.1).  Because Defendants made the 2021 Arbitration Demand central to multiple arguments they made in support of their Motion, it is a judicial document to which a high presumption of access attaches.   See Bernstein, 307 F. Supp. 3d at 166-67.

Defendants have not identified any specific countervailing factors to overcome this heavy presumption of public access.  They point primarily to the confidentiality provision governing the parties' arbitration proceedings. (See Def. Opp. at 12.)  However, "[c]onfidentiality agreements alone are not an adequate basis for sealing[.]"  Bristol-Meyers Squibb Co. v. Novartis Pharma AG, 2022 WL 1443319, at *1 (S.D.N.Y. May 6, 2022) (collecting cases).  They have not identified any specific privacy interests that will be jeopardized by the unsealing of the document.  And, as the Court has explained above, the allegations Plaintiff asserted in the 2021 Arbitration Demand are not materially distinct from those she asserted in her Complaint in the instant case.  As such, Defendants

have not overcome the presumption of public access that attaches to Exhibit D.

Finally, Defendants' failure to overcome the common law presumption of access is fatal to the necessary First Amendment analysis, which requires a "more stringent . . . framework" to justify continued sealing. Lugosch, 435 F.3d at 124; see also Bernstein, 307 F. Supp. 3d at 169 ("Because the Court has held that Defendant O'Reilly is not entitled to seal the Agreements under the less stringent Common Law standard, it need not also determine whether the Agreements are subject to a First Amendment presumption[.]")

Accordingly, Plaintiff's motion to unseal her 2021 Arbitration Demand, attached as Exhibit D to the First Grumet-Morris Declaration, is granted.

## IV.  **Conclusion**

For the foregoing reasons, Defendants' Motion to Compel Arbitration is DENIED insofar as Plaintiff's claims accrued following the enactment of the EFAA on March 3, 2022. However, Defendants' Motion to Dismiss with prejudice is GRANTED. Plaintiff's cross-motions for leave to amend and to enjoin arbitration are DENIED.  Plaintiff's cross-motion to unseal Exhibit D to the First Grumet-Morris Declaration is GRANTED.

The Clerk of the Court is directed to close docket entry numbers 30 and 36 and to unseal docket entry number 32-4.  The

Court dismisses the above-captioned case with prejudice. Accordingly, the Clerk of the Court shall also mark this action as closed and mark all other open motions denied as moot.

**SO ORDERED.**

Dated:    August 23, 2024
          New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge