# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ANDOWAH NEWTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 23-cv-10753 |
| | ) | |
| v. | ) | |
| | ) | |
| LVMH MOËT HENNESSY LOUIS | ) | |
| VUITTON INC. and RODNEY C. PRATT. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RELIEF FROM OR TO ALTER OR AMEND THE JUDGMENT, AND/OR FOR AMENDED FINDINGS

Max Rodriguez
LAW OFFICE OF MAX RODRIGUEZ PLLC
575 5th Avenue, 14th Floor
New York, NY 10017
max@maxrodriguez.law
(646) 741-5167
*Counsel for Plaintiff Andowah Newton*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

I.    LEGAL STANDARDS ............................................................................................... 2

    A.    Rule 59(e) .......................................................................................................... 2

    B.    Rule 60(b) .......................................................................................................... 2

    C.    Rule 52(b) .......................................................................................................... 3

II.    THE COURT SHOULD VACATE ITS JUDGMENT OF DISMISSAL WITH PREJUDICE AND GRANT PLAINTIFF LEAVE TO REPLEAD HER RETALIATION CLAIMS ........................................................................................... 3

    A.    The Court should vacate its judgment dismissing the case with prejudice ........................ 3

    B.    The Court should permit Plaintiff to replead her retaliation claims ................................. 4

        1.    Denying leave to replead would constitute an abuse of discretion ................................. 4

        2.    Repleading would not be futile because the Court dismissed Plaintiff's claims for reasons that can be cured ............................................................................................. 6

        3.    Other grounds for denying leave to amend are not present in this case ......................... 9

    C.    Failure to vacate the judgment and grant Plaintiff leave to replead would be manifestly unjust .............................................................................................................. 10

III.    THE COURT SHOULD PERMIT PLAINTIFF TO ADD THE ADDITIONAL CLAIMS PROPOSED IN HER CROSS-MOTION TO AMEND ................................ 11

    A.    A "case" under the EFAA includes amended claims ............................................... 12

    B.    Plaintiff did not bring her cross-motion to amend in bad faith ................................... 13

IV.    THE COURT SHOULD ENJOIN THE ARBITRATION ............................................. 17

CONCLUSION .................................................................................................................. 17

i


# TABLE OF AUTHORITIES

## Cases

*Ansam Associates, Inc. v. Cola Petroleum, Ltd.*,
760 F.2d 442 (2d Cir. 1985) ... 17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ... 13

*Boykin v. KeyCorp*,
521 F.3d 202 (2d Cir. 2008) ... 11

*Cohen v. American Airlines, Inc.*,
*13 F.4th 240 (2d Cir. 2021).* ... 16, 17

*Cortec Industries, Inc. v. Sum Holding LP*,
949 F. 2d 42 (2d Cir. 1991) ... 6

*Dougherty v. Town of North Hempstead Bd. of Zoning*,
282 F.3d 83 (2d Cir. 2002) ... 7

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
672 F.3d 113 (2d Cir. 2011) ... 20

*ING Global v. UPS Oasis Supply Corp.*,
757 F.3d 92 (2d Cir. 2014) ... 2

*Johnson v. Everyrealm, Inc.*,
657 F. Supp. 3d 535 (S.D.N.Y. 2023) ... 14, 15

*Levinson v. Wilmer Cutler Pickering Hale and Dorr LLP*,
999 F. Supp. 2d 226 (D.D.C. 2013) ... 19

*Littlejohn v. City of New York*,
795 F.3d 297 (2d Cir. 2015) ... 8

*Loreley Financing No. 3 v. Wells Fargo Securities*,
797 F.3d 160 (2d Cir. 2015) ... 6

*Lucente v. IBM Corp.*,
319 F.3d 243 (2002) ... 7

*Mandala v. NTT Data, Inc.*,
88 F. 4th 353 (2d Cir. 2023) ... 6

*Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*,
970 F. 3d 133 (2d Cir. 2020) ... 3, 6

*Munafo v. Metropolitan Transp. Authority*,
    381 F.3d 99 (2d Cir. 2004) .................................................................. 2

*Olivieri v. Stifel, Nicolaus & Co., Inc.*,
    112 F.4th 74 (2d Cir. 2024) ............................................................... 15

*Porat v. Lincoln Towers Community Ass'n*,
    464 F.3d 274 (2d Cir. 2006) ................................................................ 5

*Ruotolo v. City of New York*,
    514 F. 3d 184 (2d Cir. 2008) ............................................................... 4

*Sequa Corp. v. GBJ Corp.*,
    156 F.3d 136 (2d Cir. 1998) ................................................................ 3

*State Teachers Ret. Bd. v. Fluor Corp.*,
    654 F.2d 843 (2d Cir. 1981) .............................................................. 12

*Van Buskirk v. The New York Times Co.*,
    325 F.3d 87 (2d Cir. 2003) ................................................................. 4

*Vega v. Hempstead Union Free School Dist.*,
    801 F.3d 72 (2d Cir. 2015) ................................................................. 8

*Williams v. Citigroup Inc.*,
    659 F.3d 208 (2d Cir. 2011) ............................................................... 7

**Statutes**

42 U.S.C. § 2000e-5 ............................................................................. 8

9 U.S.C. § 402 .................................................................................. 12

**Rules**

Fed. R. Civ. P. 11 ............................................................................. 9

Fed. R. Civ. P. 12 ..................................................................... 3, 4, 6

Fed. R. Civ. P. 13 ............................................................................ 12

Fed. R. Civ. P. 14 ............................................................................ 12

Fed. R. Civ. P. 15 ....................................................................... 3, 12

Fed. R. Civ. P. 18 ...................................................................... 12, 15

Fed. R. Civ. P. 19 ............................................................................ 12

Fed. R. Civ. P. 52 ................................................................................................................ 3

Fed. R. Civ. P. 59 ............................................................................................................. 2, 3

Fed. R. Civ. P. 60. ............................................................................................................ 2, 3

Plaintiff Andowah Newton submits the following Memorandum of Law in support of her Motion for Relief from or to Alter or Amend the Judgment, and/or for Amended Findings.

## **<u>INTRODUCTION</u>**

To correct clear errors of law and prevent manifest injustice, Ms. Newton moves pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend the Court's Judgment, entered August 26, 2024 [ECF 54], granting Defendants' motion to dismiss with prejudice [ECF 30] and denying Ms. Newton's cross-motions for leave to amend her complaint and to enjoin the arbitration [ECF 36]. In the alternative, Ms. Newton moves for relief from the Judgment and underlying Opinion and Order, dated August 23, 2024 ("Order") [ECF 53], pursuant to Rule 60(b), and/or amended findings under Rule 52(b).

Because the defects identified by the Court in Ms. Newton's retaliation claims can be cured through an amended pleading and no opportunity to seek leave to replead these claims was provided before dismissal with prejudice, the Court should vacate its judgment of dismissal with prejudice and grant Ms. Newton leave to replead her retaliation claims within 45 days of the Court's order on this motion (or such other period as the Court may decide). By doing so, the Court would permit Ms. Newton a first opportunity to cure the pleading deficiencies identified by the Court in its Order.

Following therefrom, Ms. Newton's Cross-Motion for Leave to Amend the Complaint [ECF 37] should have been granted. After an opportunity to cure the pleaded retaliation claims, the requested amendment to incorporate earlier related claims would not be futile. Among other things, the claims could properly be asserted in federal court as a part of the same "case" as the originally-pleaded retaliation claims. Furthermore, there was no bad faith in proposing to amend the complaint through a motion for leave to amend rather than amending as of right.

1

Accordingly, Ms. Newton also requests the Court to reconsider its denial of said motion and permit Ms. Newton to incorporate the proposed additional claims and defendants in her repleaded complaint. Ms. Newton further requests, pursuant to Rule 52(b), that the Court amend or alter its finding that Ms. Newton acted in bad faith in seeking to amend her complaint.

## ARGUMENT

### I.   LEGAL STANDARDS

#### A.   Rule 59(e)

Rule 59(e) permits a "motion to alter or amend a judgment." Fed. R. Civ. P. 59(e). This "rule 'covers a broad range of motions'" and "the only real limitation on the type of the motion permitted is that it must request a substantive alteration of the judgment, not merely the correction of a clerical error, or relief of a type wholly collateral to the judgment." *ING Global v. UPS Oasis Supply Corp.*, 757 F.3d 92, 96 (2d Cir. 2014) (quoting *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 153 (2d Cir. 2008)).

While "Rule 59(e) does not prescribe specific grounds for granting a motion to alter or amend an otherwise final judgment," the Second Circuit has held "that district courts may alter or amend [a] judgment 'to correct a clear error of law or prevent manifest injustice.'" *Munafo v. Metropolitan Transp. Authority*, 381 F.3d 99, 105 (2d Cir. 2004) (quoting *Collison v. Int'l Chem. Workers Union, Local 217*, 34 F.3d 233, 236 (4th Cir.1994)).

#### B.   Rule 60(b)

Rule 60(b)(6) provides that a court may relieve a party from a judgment or order for, *inter alia*, "any . . . reason that justifies relief." Fed. R. Civ. P. 60(b)(6). The Second Circuit has described this "as a catch-all provision that 'is properly invoked only when there are extraordinary circumstances justifying relief [and] when the judgment may work an extreme and

undue hardship. . . .'" *Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*, 970 F. 3d 133, 143 (2d Cir. 2020) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986)).

### C.     Rule 52(b)

Rule 52(b) provides that, on the motion of a party, "the court may amend its findings—or make additional findings—and may amend the judgment accordingly." Fed. R. Civ. P. 52(b). The decision on a Rule 52(b) motion is "committed to the sound discretion of the district court." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 142 (2d Cir. 1998).

## II.     THE COURT SHOULD VACATE ITS JUDGMENT OF DISMISSAL WITH PREJUDICE AND GRANT PLAINTIFF LEAVE TO REPLEAD HER RETALIATION CLAIMS

### A.     The Court should vacate its judgment dismissing the case with prejudice

When a district court has not already granted leave to replead post-dismissal, the plaintiff "must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)." *Ruotolo v. City of New York*, 514 F. 3d 184, 191 (2d Cir. 2008) (citing *Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 244-45 (2d Cir. 1991)).[1]

In this case, Ms. Newton respectfully submits the Court erred by not considering whether dismissal of Ms. Newton's claims <u>without</u> prejudice was appropriate prior to ordering dismissal <u>with</u> prejudice under Rule 12(b)(6). "[A] court granting a [Rule] 12(b)(6) motion [to dismiss] should consider a dismissal without prejudice 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Van Buskirk v. The New York Times Co.*, 325 F.3d 87, 91 (2d Cir. 2003).

---

[1] Because it is necessary to vacate the judgment of dismissal with prejudice before seeking to file an amended complaint, this motion does not seek relief under Rule 15(a)(2) and Ms. Newton has therefore not included a proposed amended complaint under Local Civil Rule 15.1. Should the Court wish, Ms. Newton will submit a motion for leave to amend, along with a proposed amended complaint, prior to filing a repleaded complaint.

Ms. Newton respectfully submits she could amend her complaint to state a valid claim for retaliation under Title VII, as well as the state and city Human Rights Laws. Indeed, the Court described what it held to be defects in Ms. Newton's complaint as limited to one particular element. *See, e.g.*, Order at 35 (Plaintiff "failed to allege sufficiently that she engaged in protected activities of which Defendants were aware"), 36 ("Plaintiff has provided no indication that her refusal to speak with Pratt about settlement represented her intent to complain further."), 38 ("Plaintiff has failed to allege any Defendants had notice of the statements she made in the fall of 2022."). Ms. Newton is well-positioned to provide additional detail that would address the points the Court identified in its Order and Opinion.[2]

As explained in greater depth below, Ms. Newton respectfully submits it would be an abuse of discretion to deny her the opportunity to replead her retaliation claims. The Court should therefore vacate its Judgment of dismissal with prejudice as a necessary predicate to granting Ms. Newton leave to replead.

### B.    The Court should permit Plaintiff to replead her retaliation claims

#### 1.    Denying leave to replead would constitute an abuse of discretion

"[T]his circuit <u>strongly</u> favors [the] liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)." *Porat v. Lincoln Towers Community Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (emphasis added); *see also Cortec Industries, Inc. v. Sum Holding LP*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."). In this case, justice requires that Ms. Newton be permitted to replead

---

[2] For purposes of appeal, Ms. Newton reserves the right to argue and does not waive the argument that the Court erred in finding that the retaliation claims as pleaded did not state a claim. Nevertheless, the opportunity to re-plead would moot the need to appeal this issue.

her complaint because she had a viable claim for retaliation and should not be deprived of her day in court.

In particular, consistent with the Second Circuit's "strong preference for resolving disputes on the merits," a plaintiff should generally be permitted to file a revised complaint after losing a motion to dismiss for failure to state a claim, particularly when doing so "<u>may</u> cure" the defects found by the court. *See Loreley Financing No. 3 v. Wells Fargo Securities*, 797 F.3d 160, 189-90 (2d Cir. 2015) (emphasis added).

"Although leave to replead is within the discretion of the district court, refusal to grant it without any justifying reason is an abuse of discretion." *Cortec Industries*, 949 F. 2d at 48. This is especially true in cases like this one, as the Second Circuit has held on multiple occasions, when the plaintiff has not been afforded a previous opportunity to amend their complaint. *See Mandala v. NTT Data, Inc.*, 88 F. 4th 353, 362 (2d Cir. 2023) ("Plaintiffs here seek to file a first amended complaint. In that event, 'it is an abuse of discretion to deny' post-judgment relief, 'without any justifying reason'") (citations omitted)); *Metzler Inv.*, 970 F. 3d at 144 ("[I]t is an abuse of discretion to deny a motion under Rule 59(e) . . . when the plaintiff was never given an opportunity to replead in the first place."); *see also See Williams v. Citigroup Inc.*, 659 F.3d 208, 212–14 (2d Cir. 2011).

In particular, leave to amend may be denied based on "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party. . . [or] futility of amendment[.]" *Dougherty v. Town of North Hempstead Bd. of Zoning*, 282 F.3d 83, 87–88 (2d Cir. 2002) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). None of those reasons exists here. Accordingly, we respectfully submit that the Court's conclusion to the contrary, denying Ms. Newton leave to

amend her complaint by dismissing with prejudice, was an abuse of discretion and clear legal error.

           2.       <u>Repleading would not be futile because the Court dismissed Plaintiff's claims for reasons that can be cured</u>

      "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. IBM Corp.*, 319 F.3d 243, 258 (2002) (citing *Dougherty*, 282 F.3d at 88). Here, it would not be futile for Ms. Newton to file an amended complaint because she would be able to cure the defects identified by the Court in granting Defendants' motion to dismiss under Rule 12(b)(6). Indeed, Ms. Newton represents that, for each defect identified by the Court, facts exist that would permit her to make the necessary factual allegations in a repleaded complaint.

      To state a claim for retaliation under Title VII of the Civil Rights Act of 1964, "a complaint must plausibly allege that (1) the plaintiff participated in a protected activity; (2) the defendant knew of the protected activity; (3) the plaintiff suffered an adverse employment action; and (4) there is a causal connection between the plaintiff's protected activity and the adverse employment action she suffered." Order at 31 (citing *Littlejohn v. City of New York*, 795 F.3d 297, 315–16 (2d Cir. 2015)).[3] In this case, "protected activity" refers to opposing any unlawful employment practice, such as by "filing formal complaints as well as [engaging in] informal protests, [making] complaints to management, and expressing support for co-workers who filed formal charges." *Id.* at 35-36 (collecting cases). And even post-*Iqbal* and *Twombly*, a Title VII plaintiff "need not allege facts establishing each element of a prima facie case . . . to

---

[3] The elements of retaliation claims under the New York State Human Rights Law and New York City Human Rights Law are largely the same as under Title VII. *See* Order at 32 (collecting cases).

survive a motion to dismiss." *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (quoting *EEOC v. Port Authority of New York & New Jersey*, 768 F.3d 247 (2d Cir. 2014)).

And where earlier acts were sufficiently connected with timely acts so as to make them actionable under the continuing violation doctrine, claims that accrued more than 300 days before the plaintiff filed his or her charge with the EEOC, those claims are not time-barred. *See id.* at 32–33. Here, the Court found that the continuing violation doctrine did not apply, and accordingly limited its analysis to allegations of retaliatory acts occurring after July 23, 2022, *i.e.*, 300 days before Ms. Newton filed her charge with the EEOC. *See id.*[4]

In considering whether Ms. Newton's complaint stated a claim for retaliation, the Court held that "[t]he primary activity that Plaintiff asserts triggered Defendants' timely retaliatory acts is her refusal to meet with Pratt about a potential settlement of her legal claims against LVMH," but concluded that Ms. Newton had not sufficiently alleged facts demonstrating that this refusal constituted protected activity. *Id.* at 36. Specifically, the Court stated that "Plaintiff has provided no indication that her refusal to speak with Pratt about settlement represented her intent to complain further about Defendants' unlawful discriminatory practices." Order at 36-37.

Ms. Newton did not allege that her refusal to discuss settling her litigation against Defendant Pratt's client, Defendant LVMH Moët Hennessy Louis Vuitton ("Louis Vuitton"), without her counsel present was the sole — or even primary — protected activity underlying her retaliation claims. In a repleaded complaint, Ms. Newton would be able to allege that she was retaliated against for multiple instances of protected activity of which Defendants had notice,

---

[4] For purposes of appeal, Ms. Newton reserves the right to argue and does not waive the argument that the Court erred in denying the motion for leave to amend because the claims were not part of a continuing violation.

including but not limited to making formal and informal complaints, instituting and maintaining the litigation and arbitration against Defendant Louis Vuitton, defending herself against Louis Vuitton's attempts to seek nearly $1 million in attorneys' fees for their motion to compel arbitration, and her public protests against Louis Vuitton's unlawful actions, both against herself and other survivors of workplace sexual harassment, and expressing support for co-workers subjected to sexual harassment, assault, and retaliation.[5]

But even if the Court focused on Ms. Newton's refusal to meet with Defendant Pratt specifically, Ms. Newton respectfully submits the Court erred in concluding that this activity could constitute "protected activity" only if she had intended to "complain further," based on cases where the plaintiff alleged retaliation for refusing to sign a waiver of rights. *Cf.* Order at 36-37. What matters is whether Ms. Newton's action was intended to oppose an unlawful employment practice, which is a fact- and context-specific question. Here, the parties were already engaged in litigation (and two arbitrations) concerning sexual harassment, related unlawful employment practices, and disputes about the arbitration agreement's application to those claims. It follows that, in a repleaded complaint, Ms. Newton would be able to allege that one of the reasons she declined such a meeting was to continue her efforts to pursue her claims for sexual harassment and prior retaliation, which is a protected activity.

---

[5] It does not matter that some of these activities occurred or began prior to the July 23, 2022 cut-off date. Ms. Newton disagrees with the Court's conclusion that none of the post-July 23, 2022 acts of retaliation are sufficiently connected to earlier events to constitute continuing violations and anticipates that she would be able to allege facts demonstrating the similarity of the "nature of the incidents," Order at 34, on both sides of this line. Nevertheless, even without a finding of continuing violations, there is no bar to Ms. Newton alleging that the protected activity, in response to which she was subject to retaliation, occurred more than 300 days before the EEOC charges, as long as, like here, the alleged retaliation occurred within the relevant time frame. *See* 42 U.S.C. § 2000e-5(e)(1) (providing that the statutory time period runs from when the "alleged unlawful employment practice" occurred).

The Court also concluded that "Plaintiff has not given any indication Defendants knew about" statements that she made at public events or posted online because she "has not alleged that Pratt or any other LVMH employee attended those events, heard her remarks, or viewed or even had access to her written statements on social media." *Id.* at 37. In a repleaded complaint, Ms. Newton would be able to allege facts sufficient to permit an inference of "general corporate knowledge," *see id.* (quoting *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007)), as well as causation, relating to her Congressional testimony and other protected activity alleged in the complaint.[6] *Cf.* Order at 38-39. At a minimum, and to the extent not already adequately alleged, Ms. Newton would be able to plead Defendants' knowledge based on information and belief. *See Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008); *see also* Fed. R. Civ. P. 11(b)(3) (permitting factual contentions that "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery," if specifically so identified).

Accordingly, a first opportunity to amend the complaint to replead Ms. Newton's retaliation claims would not be futile.

### 3.    Other grounds for denying leave to amend are not present in this case

As noted above, leave to amend may also be denied because of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

---

[6] For example, Louis Vuitton received notice from Ms. Newton's counsel of Congress's subpoena to Ms. Newton to testify. Louis Vuitton's General Counsel Rodney Pratt and Senior VP of HR Gena Smith also exchanged several communications with Ms. Newton about their objections to her speaking at a high-profile conference where she would be engaging in protected activity while on a panel with celebrity survivor-advocate Gretchen Carlson and other high-profile figures. Counsel for Ms. Newton and Louis Vuitton exchanged several communications regarding the same. An article about that panel was published by a media outlet and posted publicly on Ms. Newton's social media accounts. Furthermore, Louis Vuitton employees publicly reacted to or "liked" Ms. Newton's posts regarding Louis Vuitton's unlawful conduct and Ms. Newton's protected activities. And Louis Vuitton employees communicated verbally and in writing with Ms. Newton regarding the same.

previously allowed, and undue prejudice to the opposing party. None of these grounds, however, exists here.

Ms. Newton has not delayed in seeking this leave to amend her complaint. Rather, she has taken the earliest available opportunity—this motion, filed less than one month after the Court's Order and Judgment—to do so. Ms. Newton is not acting in bad faith or with a dilatory motive. As explained above, she has had no prior opportunity to amend the pleadings on these issues and will be able to cure what the Court determined were pleading defects. Ms. Newton is motivated solely by the desire to have her claims adjudicated in court on the merits.

Finally, adherence to the normal practice of permitting Ms. Newton to replead post-dismissal will not prejudice Defendants, as doing so causes them no legally cognizable harm, places them at no strategic disadvantage, and does not require Defendants to expend significant additional resources, as the parties have not engaged in significant discovery and no motion for summary judgment has been filed. *See State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981).

### C.    Failure to vacate the judgment and grant Plaintiff leave to replead would be manifestly unjust

Considering that, under the circumstances, a court should grant leave to replead post-dismissal, it would be manifestly unjust to deny the opportunity to do so here. This is especially true because it would leave Ms. Newton without a means to redress the violations of her civil and human rights in any forum and particularly this Court, as Congress decided that she and others similarly situated are entitled to do when it enacted the Ending Forced Arbitration in Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"). *See generally* Order at 16-31 (denying Defendants' motion to compel arbitration).

**III.    THE COURT SHOULD PERMIT PLAINTIFF TO ADD THE ADDITIONAL CLAIMS PROPOSED IN HER CROSS-MOTION TO AMEND**

Ms. Newton also cross-moved to amend her complaint to add five current and former Louis Vuitton executives as defendants and bring four additional claims for sexual harassment, aider and abettor liability, and violations of the federal and state Equal Pay Acts, equivalent to ones currently in arbitration.[7] The Court, however, denied Ms. Newton's cross-motion for three reasons: (i) the Court concluded that amendment would be futile because, following the dismissal of Ms. Newton's retaliation claims, the proposed additional claims would be subject to mandatory arbitration; (ii) the Court concluded that the proposed additional claims were not part of the same "case" for purposes of the EFAA; and (iii) the Court concluded that Ms. Newton was engaged in bad-faith forum shopping. *See* Order at 42-43.

Ms. Newton respectfully submits each of these conclusions was clear error. First, as explained above, the Court should have granted leave to replead the retaliation claims, negating any corresponding conclusion that the proposed amendment to include the claims related to

---

[7] Ms. Newton also proposed to amend the factual allegations contained in 11 paragraphs of her Complaint. Because those factual allegations concern her retaliation claims, rather than the proposed additional claims, these proposed amended factual allegations are subsumed within her request for leave to replead her retaliation claims, *supra*. To the extent that the Court considered Ms. Newton's proposed amended factual allegations to be futile because they would not support "plausible" claims for retaliation, *see* Order at 44-45, Ms. Newton submits she would be able to address the Court's concerns in her repleaded complaint, as noted above.

The Court also does appear to have misconstrued the requirement under *Twombly* to allege facts that plausibly permit an element of a claim to be inferred (rather than rely on conclusory recitations of the elements) as a requirement that the allegations themselves must be plausible. *See, e.g.*, Order at 35 (Plaintiff's "claims could only survive dismissal if supported by plausible allegations that she opposed Defendants' unlawful employment practices"), 44-45. But "plausible," as used in *Twombly*, refers to the relationship between the facts alleged and the inference to be drawn, not the nature of the facts alleged. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-556 (2007). Even in cases far less plausible than Ms. Newton's, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" 550 U.S. at 556.

earlier incidents was futile. Second, the Court's interpretation of the EFAA and its consideration of the holding in *Johnson v. Everyrealm, Inc.* was clear error because it fails to adhere to the EFAA's statutory text and the Second Circuit's interpretation of the same. Third, the Court's conclusion that filing a motion for leave to amend constituted bad faith was clear error.

### A. A "case" under the EFAA includes amended claims

Ms. Newton submits that the proposed amended claims should be considered part of this "case." The EFAA invalidates arbitration agreements for "a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute" alleged by the plaintiff. 9 U.S.C. § 402(a). As Judge Engelmayer held, the commonly-understood meaning of a "case" is "a suit or action in law or equity … or a civil or criminal proceeding, action, suit, or controversy at law or in equity…." *Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 558–59 (S.D.N.Y. 2023). The Court concluded that *Johnson* did not apply because a case does not "encompass several claims disputed by the same parties across distinct and disparate forums." Order at 49.

But the Court's reading of "case" to distinguish *Johnson* from this case cannot be squared with Congress' language in the EFAA, its purpose, or with the structure and logic of the Rules of Civil Procedure.[8] As implied by the reasoning in *Johnson*, the use of the word "case" as distinguished from "the discrete claims in that case that themselves either allege such harassment or relate to a sexual harassment dispute" must also include yet-unasserted claims that may properly be asserted in that case. 657 F. Supp. 3d at 559. As the Second Circuit recently

---

[8] The Rules, at various junctures, contemplate and indeed compel the addition of yet-to-be-asserted claims within a single case, and govern the management of that case as one ongoing case. *See, e.g.*, Fed. R. Civ. P. 13(a) (requiring inclusion of compulsory counterclaims); Fed. R. Civ. P. 14 (permitting inclusion of third-party claims); Fed. R. Civ. P. 15; Fed. R. Civ. P. 18 (permitting joinder of claims); Fed. R. Civ. P. 19 (requiring joinder of parties).

explained, the EFAA's text "may involve conduct that predated the EFAA" even though it "expressly indicated that the statute applies to claims that accrue after the statute's effective date…." *Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 91 (2d Cir. 2024). In other words, the statute's text does not permit the line this Court drew. And indeed, that line would invite absurd results. By the Court's logic, if a plaintiff were to file a case in federal court asserting claims based on post-EFAA sexual harassment, and then subsequently experienced another post-EFAA civil injury like an unrelated tort or breach of contract by the same defendant, that plaintiff would be unable to amend their complaint to add those additional claims if a predispute arbitration agreement were in place.

That is not what the EFAA's text contemplates or commands. By using the word "case," the EFAA sought to permit the litigation of claims in a single case in court, with all attendant civil procedures, and to invalidate arbitration agreements as to such cases. For those limited few plaintiffs whose related and/or continuous experiences of harassment, assault, or retaliation straddle the EFAA's effective date, a case must be permitted to include both post-EFAA claims and pre-EFAA instances of harassment, assault, or retaliation.

### B. Plaintiff did not bring her cross-motion to amend in bad faith

The Court also denied Ms. Newton's cross-motion for leave to amend on the grounds that Ms. Newton was engaged in bad-faith forum shopping. Such a conclusion, however, is clear error and rebutted by the record in this case.

The Court concluded that Ms. Newton had requested to amend her complaint in bad faith by analogy to *Cohen v. American Airlines, Inc.*,[9] in which the Second Circuit "affirmed the district court's denial of a plaintiff's leave to amend his complaint because it was apparent that

---

[9] 13 F.4th 240 (2d Cir. 2021).

he was doing so only to avoid the applicable statute of limitations under international law that would have required dismissal of his complaint." Order at 50 (citing *Cohen*, 13 F.4th at 247).[10] The Court, however, failed to account for the significant factual and legal differences that make *Cohen* distinguishable.

In *Cohen*, the Second Circuit explained that "Cohen's proposed amended complaint differed from his original complaint only insofar as it <u>alleged the loss of two pairs of sunglasses</u> on an American flight from Miami to Nassau occurring <u>three years after</u> the events giving rise to his original allegations." *Cohen*, 13 F.4th at 247 (emphasis added). It then stated that "[t]he district court did not abuse its discretion in ruling that the new allegation was included solely to avoid the Montreal Convention's two-year statute of limitations, and thus was made in bad faith." *Id.* In support of this conclusion, the Second Circuit cited to a single case, *Ansam Associates, Inc. v. Cola Petroleum, Ltd.*,[11] which it characterized in an explanatory parenthetical as "affirming denial of motion to amend when the new proposed claims 'concerned a different period of time,' and 'allege[d] an entirely new set of operative facts of which it cannot be said that the original complaint provided fair notice,' thereby prejudicing defendant. . . ." *Id.* (alteration in the original).

Accordingly, *Cohen* does not stand for the proposition that <u>any</u> proposed amendment intended to "avoid the application of a law that would otherwise end his case" is deemed to be made in bad faith, *cf.* Order at 50, but only that seeking to add a <u>marginal</u> claim, unrelated to existing claims in time or fact, in a manner that prejudices the opposing party, demonstrates bad

---

[10] The Second Circuit upheld the district court's denial of leave to amend because the plaintiff's arguments on appeal did "not address the basis for the district court's denial" and he had therefore "waived any challenge to the district court's ruling," *Cohen*, 13 F.4th at 247, while the remainder of the court's brief discussion is *dicta*.

[11] 760 F.2d 442, 446 (2d Cir. 1985).

faith. In contrast, Ms. Newton's proposed additional claims are closely related to her existing claims, are not remote in time, and are based on the same set of facts already alleged in her original complaint.

Moreover, Ms. Newton's proposed amendment was not an attempt to "avoid the application of a law that would otherwise end [her] case," and the Court did not point to any such law that was implicated here. Rather, it was an attempt to enforce an applicable law (the EFAA) that would enable her to vindicate her rights in court after Congress determined arbitration agreements should be deemed invalid and unenforceable in this context as a matter of public policy. Congress chose to make the EFAA applicable to entire cases rather than specific claims.[12] The attempt to assert the rights Ms. Newton believed to be afforded by the statute is not bad faith. For example, a state court defendant does not act in bad faith by electing to remove a case to federal court on the basis of diversity jurisdiction and then seek to assert counterclaims there, even if the federal court determines the case should be remanded.

The Court also found that its conclusion concerning bad faith was "bolstered by the timing of Plaintiff's proposed amendment,"[13] given that Ms. Newton knew that she wanted to amend her complaint no later than December 20, 2023, when she could have amended as a matter of right, yet "instead chose to wait months to seek the Court's leave." *See* Order at 51.

Ms. Newton respectfully submits that the Court may have mistakenly characterized the relevant events. On December 19, 2023, former counsel for Ms. Newton submitted a letter to the Court requesting "a premotion conference on Plaintiff's intended motion for leave to amend the

---

[12] In doing so, Congress would have been aware of Federal Rule of Civil Procedure 18, which permits a plaintiff to "join . . . as many claims as it has against an opposing party" in a single proceeding.

[13] Because we respectfully submit the Court's primary reasoning concerning bad faith was erroneous, there is nothing for the aforementioned timing concerns to "bolster[]."

complaint," *see* Letter from Nathaniel K. Charny to the Court (Dec. 19, 2020) [ECF 15], as is required prior to filing a motion under Section 2(A) of the Court's Individual Practices. In other words, rather than waiting months before seeking leave, notice had been given not just of the intent to amend, but of the intent to amend by motion rather than as of right. The briefing schedule set by the Court was complied with, *see* Order of January 24, 2024 [ECF 28], as amended [ECF 35], and the motion was filed on March 19, 2024 [ECF 36]. This sequence of events reflects a direct and honest communication of the intention to file a motion for leave to amend.

Furthermore, the reasons for pursuing a motion for leave to amend rather than amending as a matter of right were undertaken for good-faith reasons disclosed to the Court. As counsel for Defendants recounted in her declaration, Ms. Newton's prior counsel explained to the Court during a telephonic hearing why a motion to amend was preferable over amending the complaint as a matter of right. *See* Declaration of Aviva Grumet-Morris [ECF 40] at ¶¶ 4–6. And even if that reasoning was flawed, that would not be bad faith. *See, e.g.*, *Levinson v. Wilmer Cutler Pickering Hale and Dorr LLP*, 999 F. Supp. 2d 226, 228 (D.D.C. 2013) (holding proposed amendments that would remove state-law claims and defeat federal question jurisdiction were not bad faith but rather "a legitimate attempt to try [plaintiff's] [] claims in the forum of her choice." (quoting *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 340 (5th Cir. 1999)). Accordingly, bad faith was not a basis to deny the motion for leave to amend, and the motion for leave to amend should have been granted. Furthermore, even if the Court denies Ms. Newton's motion to vacate, amend, and/or alter the judgment, we respectfully submit the Court was mistaken in attributing bad faith to Ms. Newton, and should amend or alter its findings that Ms. Newton acted in bad faith.

16

**IV.    THE COURT SHOULD ENJOIN THE ARBITRATION**

Finally, the Court denied Ms. Newton's cross-motion to enjoin the arbitration based on its conclusion that the "EFAA does not apply to the claims Ms. Newton asserts that accrued prior to the EFAA's enactment, including the Proposed Added Claims she seeks to amend in the PFAC." Order at 54. As explained above, and among other things, the proposed amended complaint included claims properly considered part of the same "case" under the EFAA, and because no other factor warranted denial of the motion for leave to amend, the motion should have been granted. That necessarily would have required finding the arbitration agreement was void and unenforceable and enjoining the arbitration, because the EFAA invalidated its application to Ms. Newton's claims. *See In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 140–41 (2d Cir. 2011).

<u>**CONCLUSION**</u>

For all of the foregoing reasons, this Court should grant Ms. Newton's Motion, alter, amend, or vacate the judgment of dismissal with prejudice, grant Ms. Newton leave to replead her retaliation claims, reconsider the denial of and grant Ms. Newton's cross-motion for leave to amend her complaint, permit Ms. Newton to incorporate the proposed additional claims and additional defendants in her amended complaint, amend or alter the finding of bad faith, and enjoin the arbitration.

Respectfully submitted,

DATED:    September 20, 2024          /s/ Max Rodriguez
                                     Max Rodriguez
                                     LAW OFFICE OF MAX RODRIGUEZ PLLC
                                     575 5th Avenue, 14th Floor
                                     New York, NY 10017
                                     max@maxrodriguez.law
                                     (646) 741-5167
                                     *Counsel for Plaintiff Andowah Newton*